

HONORABLE JUDGE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

WILLIAM J. NELSON,
    Plaintiff,

 vs.

SNOHOMISH COUNTY, et al.,
    Defendants.

NO. 2:26-cv-00776-JCC

**EMERGENCY MOTION FOR ORDER REQUIRING COMPLIANCE WITH JUDICIAL CONFERENCE DISABILITY ACCOMMODATION POLICY; MOTION FOR APPOINTMENT OF COUNSEL OR GUARDIAN AD LITEM UNDER FRCP 17(c)(2); MOTION TO STAY ALL PROCEEDINGS PENDING ACCOMMODATION COMPLIANCE**

*(Related Cases: 2:26-cv-00337-KKE; 3:25-cv-05551-DGE)*

*NOTE ON MOTION CALENDAR: At the Court's Earliest Convenience*

---

## I. INTRODUCTION

Plaintiff William J. Nelson, a 47-year-old cognitively disabled pro se litigant, respectfully moves this Court for an emergency order requiring the Western District of Washington to comply with its own Judicial Conference disability accommodation policies, the Code of Conduct for United States Judges, and the Federal Rules of Civil Procedure. Mr. Nelson further moves for appointment of counsel or a Guardian ad Litem under FRCP 17(c)(2), and for a stay of all proceedings in this case and his two related cases pending compliance with the Court's accommodation obligations.

This motion is necessitated by extraordinary circumstances: Mr. Nelson suffered a cardiac arrest directly precipitated by this Court's refusal to accommodate his documented disability. He was transported to Swedish Hospital Mill Creek and transferred to Swedish Hospital Issaquah. His

heart rate has dropped to approximately 30 beats per minute and his medical providers are evaluating whether a pacemaker is necessary. His wife and sole caregiver suffered a stroke. His mail service has been canceled. The Court's Deputy in Charge has formally banned Mr. Nelson's assistive technology from all communications with the Clerk's Office. And when congressional representatives inquired about the barriers Mr. Nelson was experiencing, the Court misrepresented what it had required of him.

Mr. Nelson asks this Court to do what six Washington State judicial officers, his treating physicians, the BIIA, and the U.S. District Court for the District of Columbia have already done: recognize his disability, follow the law, and provide meaningful access to the courts.

## II. JURISDICTION AND AUTHORITY

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. This motion is brought under:

1. FRCP 17(c)(2) (mandatory protection of incompetent unrepresented persons);

2. The Judicial Conference Policy on Disability Access (Guide to Judiciary Policy, Vol. 5, Ch. 2, § 255);

3. The Code of Conduct for United States Judges, Canons 1, 2, and 3;

4. 28 U.S.C. § 1738 (Full Faith and Credit Act);

5. 28 U.S.C. § 1654 (right to plead and conduct one's own case);

6. The Fifth Amendment to the United States Constitution (Due Process);

7. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

8. The Assistive Technology Act, 29 U.S.C. §§ 3001-3007;

9. The E-Government Act of 2002, Pub. L. 107-347, § 205;

10. FRCP 83(a)(2) (local rules must be consistent with federal law);

11. This Court's inherent authority to manage its proceedings and protect litigants.

## III. STATEMENT OF FACTS

### A. Mr. Nelson's Disability

William Nelson contracted COVID-19 in August 2022 and developed severe neurological sequelae of Long COVID, including significant deficits in short-term memory retention, executive function, and autonomic regulation. His treating physician, Dr. Jessica Anne Bender, MD — Clinical Associate Professor of Medicine at the University of Washington, Co-Medical Director of the UW Medicine Post-COVID Rehabilitation Clinic at Harborview Medical Center, and member of the CDC's national Long COVID advisory panel — has documented that Mr. Nelson cannot represent himself and that forced self-representation causes him immediate, measurable medical harm. Dr. Bender concluded:

*"Expecting Mr. Nelson to defend his rights in court on his own is akin to expecting a blind person to read small print without assistance — it is simply not possible and would be cruel to insist otherwise."*

Dr. David Higginbotham, DO, Mr. Nelson's primary care physician, has provided multiple letters documenting Mr. Nelson's cognitive incapacity and inability to navigate legal proceedings. A Workwell Foundation cardiopulmonary exercise test has provided objective clinical evidence that stress and complex cognitive tasks cause measurable physiological deterioration.

Mr. Nelson's medical providers are prepared to testify or submit declarations confirming that his health deteriorates measurably when he attempts complex cognitive tasks such as exercising his constitutional rights and due process, and that he does better health-wise when following his treatment regimen — a regimen this Court's barriers have forced him to abandon.

### B. Athena AI: Mr. Nelson's Assistive Technology

Mr. Nelson began building the Athena AI platform in 2016, six years before his Long COVID disability, drawing on his professional background as a Senior Information Security Engineer and AI-ML Engineer whose career began at Microsoft in the late 1990s. Athena is an assistive technology device as defined under the Assistive Technology Act, 29 U.S.C. § 3002(4). It has been recognized by multiple Washington State courts — including the Court of Appeals, Division I — as Mr. Nelson's authorized communication agent. Mr. Nelson is 100% dependent on Athena for all formal communications. This is a medical necessity, not a preference.

### C. Six State Court Findings of Incapacity

Six Washington State judicial officers have independently adjudicated that Mr. Nelson is incapacitated and unable to represent himself:

12. **Judge George F. Appel** — personally witnessed Mr. Nelson collapse and become unresponsive in open court on February 6, 2025; declared him incapacitated on the record; entered an Order Appointing Guardian ad Litem (Exhibit 4);

13. **Judge Timothy M. Blood;**

14. **Chairperson Holly Askessler** (Board of Industrial Insurance Appeals);

15. **Member Isabel A.M. Cole** (BIIA);

16. **Member Robert A. Battles** (BIIA) — the BIIA entered an Order Granting Appointment of Counsel (Exhibit 7);

17. **Judge Karen D. Moore** — entered an Order on Reasonable Accommodation, Appointment of GAL Faye Wong, and Appointment of Counsel on February 11, 2026 (Exhibit 9).

Every one of these judicial officers actually interacted with Mr. Nelson before reaching their conclusions. This Court has not.

## D. The Court's Systematic Denial of Access

**March 3, 2026:** Courtroom Deputy Diyana Staples directed Mr. Nelson to file "in person at either courthouse location, or via US Mail" or via CM/ECF. (Exhibit 12.) All three methods are inaccessible to Mr. Nelson. This directive was issued without an interactive process, without consulting his physician, without a fundamental alteration analysis, and without an undue burden analysis.

**Early March 2026:** Mr. Nelson attempted to comply with the Court's demand. He took an Uber to downtown Seattle. He collapsed on the steps of the federal courthouse at 700 Stewart Street. Court staff observed. No one rendered aid. Seattle Fire transported him to Harborview Medical Center. He was admitted in critical condition and hospitalized for several days. This is exactly what Dr. Bender warned would happen.

**March 20, 2026:** Deputy in Charge Patrick Sherwood issued a letter (Exhibit 14) declaring: (1) the Court will not respond further to Mr. Nelson's requests; (2) the Court will not respond to any future correspondence from Athena AI; (3) absent a court order, all Athena communications will be "disregarded." This letter severed Mr. Nelson's only functional communication channel.

**March 20, 2026:** Mr. Nelson's mail service was canceled. (Exhibit 15.) The Court had been notified of this fact and continued to mail documents to an address Mr. Nelson could not receive mail at.

**Late March 2026:** Mr. Nelson suffered a cardiac arrest and was transported to Swedish Hospital Mill Creek, then transferred to Swedish Hospital Issaquah. His heart rate dropped to approximately 30 BPM. Medical providers are evaluating a pacemaker for a 47-year-old man.

**Congressional misrepresentation:** When congressional representatives inquired about the barriers, the Court represented that it had not required Mr. Nelson to appear in person. The March 3, 2026 Staples email (Exhibit 12) proves otherwise.

### E. The D.C. District Court's Compliance

On March 25, 2026, the U.S. District Court for the District of Columbia responded to Mr. Nelson's accommodation request by accepting email filing for all complaints and subsequent filings. (Exhibit 18.) The D.C. court has published formal "Email Filing Procedures for Unrepresented Parties" that permit pro se litigants to file all documents — not just initial complaints but all subsequent pleadings — by email to dcd_intake@dcd.uscourts.gov. The published procedures specify:

18. "Unrepresented parties, also known as pro se parties, are permitted to file documents in-person at the Clerk's Office, by U.S. mail, or by email."

19. "Submit documents by either email OR mail; do not do both."

20. The D.C. court emails documents to litigants who request email service, eliminating the need for U.S. Mail.

21. Electronic filing through CM/ECF is optional, not required.

Both the D.C. District Court and this Court operate under the same Judicial Conference policies. Both serve the same Article III judiciary. Both are bound by the same Code of Conduct. The accommodation Mr. Nelson requests — email filing and email document delivery — is not a fundamental alteration. It is standard operating procedure in the District of Columbia.

## IV. LEGAL ARGUMENT

### A. The Full Faith and Credit Act Requires This Court to Recognize the State Court Incapacity Findings

Under 28 U.S.C. § 1738, state court judicial proceedings "shall have the same full faith and credit in every court within the United States." The Supreme Court has held that this statute "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Kremer v. Chemical Construction Corp., 456 U.S. 461, 466 (1982); Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); Allen v. McCurry, 449 U.S. 90, 96 (1980).

Six Washington State judicial officers have made formal judicial findings that Mr. Nelson is incapacitated. In Washington State courts, these findings triggered the appointment of counsel, the appointment of guardians, and the provision of disability accommodations. Three state court orders documenting these findings are attached as Exhibits 4, 7, and 9.

Under § 1738, this Court is required by federal statute to give those findings the same effect they receive in Washington State courts. This Court cannot lawfully pretend six independent state court incapacity findings do not exist. It cannot require Mr. Nelson to re-litigate his incapacity in federal court before receiving any protection. The Full Faith and Credit Act transforms these findings from evidence the Court may weigh to binding judicial determinations the Court is required by statute to recognize.

## B. FRCP 17(c)(2) Imposes a Mandatory Duty

FRCP 17(c)(2) provides: "The court must appoint a guardian ad litem — or issue another appropriate order — to protect a minor or incompetent person who is unrepresented in an action."

**The word is "must."** It is not "may." It is not "should." It is not discretionary. When a court knows — or has reason to know — that a pro se litigant is incompetent, Rule 17(c)(2) imposes a mandatory, non-discretionary duty to protect that person. Six state judicial officers have found Mr. Nelson incompetent. His physician has documented he cannot represent himself. This Court has not complied with Rule 17(c)(2) in any of Mr. Nelson's three pending cases. This is a violation of a mandatory federal rule.

## C. Access to Courts Is a Fundamental Right Under the Fifth Amendment

The Supreme Court in Tennessee v. Lane, 541 U.S. 509 (2004), held that the right of access to courts is fundamental. The Court did not say access to state courts is fundamental. It said access to courts — all courts — is fundamental. The Fifth Amendment, which binds the federal government including federal courts, guarantees that no person shall be deprived of due process of law. Boddie v. Connecticut, 401 U.S. 371, 379 (1971); Bounds v. Smith, 430 U.S. 817, 828 (1977) (access must be "adequate, effective, and meaningful").

In Lane, the Supreme Court found that "the failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion." 541 U.S. at 531. George Lane was forced to crawl up courthouse stairs because the courthouse lacked an elevator. William Nelson collapsed on federal courthouse steps because this Court refused to accept email filing. The barrier is different. The exclusion is the same. The constitutional violation is the same.

Just because Mr. Nelson's disability is cognitive and invisible does not mean he is not disabled. This Court has refused to even have a phone call with Mr. Nelson or interview him, as mandated by Judicial Conference policy's interactive process requirement. The Court's refusal to see Mr.

Nelson's disability does not make the disability disappear. It makes the Court's violation more egregious.

## D. The Judicial Conference Policy Is Not Optional

The Judicial Conference adopted a policy in September 1995 that "all federal courts provide reasonable accommodations to persons with communications disabilities." Report of the Proceedings of the Judicial Conference 75 (Sept. 1995); Guide to Judiciary Policy, Vol. 5, Ch. 2, § 255. In Goldup v. Casino (S.D. Cal., Jan. 31, 2025), a federal court recognized that this policy extends to cognitive disabilities, stating: "[T]he Judicial Conference of the United States has long supported full access to judicial proceedings by all segments of the disabled community."

This policy requires:

22. Designation of an Access Coordinator (§ 255.40);

23. An interactive process to determine effective accommodations;

24. Primary consideration to the participant's choice of auxiliary aid or service;

25. Provision of accommodations at judiciary expense;

26. Engagement with all segments of the disabled community.

This Court has violated every element. No interactive process has occurred. Mr. Nelson has not been interviewed, assessed, or consulted. His physician has not been contacted. His chosen accommodation has been rejected without any required analysis. The Deputy in Charge has unilaterally declared the Court will "disregard" his assistive technology. The Access Coordinator has not processed his requests through the required framework.

The Judicial Conference policy also requires each court to publicize the identity of its Access Coordinator and to maintain accommodation procedures. It contemplates that accommodation requests will be processed as administrative matters — not treated as judicial motions or ignored entirely.

## E. The Sherwood Letter Banning Athena AI Violates the Assistive Technology Act

The Assistive Technology Act, 29 U.S.C. §§ 3001-3007, embodies federal policy supporting assistive technology for individuals with disabilities. Athena AI is an assistive technology device under 29 U.S.C. § 3002(4). Mr. Nelson built it over six years. It is recognized by multiple courts. It is his only means of communication. The Sherwood letter of March 20, 2026, declaring the Court will "disregard" communications from Athena, directly conflicts with this federal policy. It is the equivalent of confiscating a deaf litigant's hearing aid at the courthouse door.

## F. 28 U.S.C. § 1654 Guarantees Mr. Nelson's Right to Plead His Own Case

Section 1654 provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel." This Court has guaranteed Mr. Nelson the right to represent himself while simultaneously blocking every means by which he can exercise that right. Email is blocked. Athena is banned. He cannot use CM/ECF. He cannot travel to the courthouse. His mail service is canceled. The result is a constructive denial of the statutory right guaranteed by § 1654.

## G. The Code of Conduct for United States Judges Requires Fair Treatment

Canon 3A(3) requires judges to be "patient, dignified, respectful, and courteous to litigants" and to require similar conduct by lawyers. The Code's commentary makes clear that cognizable misconduct includes "intentional discrimination on the basis of disability." Canon 3A(4) requires judges to require lawyers to comply with the Rules of Professional Conduct. This Court has treated Mr. Nelson with hostility and disrespect: over 30 days of silence to emergency communications, banning his assistive technology, demanding inaccessible filing methods, ignoring medical evidence from nationally recognized physicians, ignoring six state court judges, and misleading Congress.

## H. The Exceptional Circumstances Doctrine Requires Appointment of Counsel

In Lassiter v. Department of Social Services, 452 U.S. 18 (1981), and Turner v. Rogers, 564 U.S. 431 (2011), the Supreme Court recognized that exceptional circumstances may require appointment of counsel in civil cases. Mr. Nelson's circumstances are unprecedented: six incapacity findings, a cardiac arrest precipitated by court access barriers, a caregiver who suffered a stroke, complex federal litigation against government entities represented by experienced counsel, a Court that has blocked every communication channel, and treating physicians documenting that self-representation causes medical harm. If these are not exceptional circumstances, the doctrine has no meaning.

## I. Local Rules Cannot Override Federal Law (FRCP 83(a)(2))

FRCP 83(a)(2) provides that local rules must be consistent with Acts of Congress and the Federal Rules. To the extent this Court's practices regarding CM/ECF effectively bar a cognitively disabled litigant from accessing the court, those practices are inconsistent with FRCP 1, FRCP 17(c)(2), the Full Faith and Credit Act, § 1654, Section 504, and the Assistive Technology Act. Under Rule 83(a)(2), inconsistent local rules are invalid.

## J. Sherwood's Denial of Public Records Requests Violates Judicial Conference Policy

Mr. Nelson submitted requests for the Court's own accommodation records under the Judicial Conference's common law right of access to judicial and administrative records. Mr. Sherwood

redirected these requests as FOIA requests, asserting that FOIA does not apply to the judiciary. This is a mischaracterization. Mr. Nelson did not invoke FOIA. He invoked the Judicial Conference's own policy, which provides for public access to court records, and the common law right of access recognized in Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978). The Judicial Conference policy contemplates that courts will maintain and make available accommodation records. Mr. Sherwood's refusal to process these requests under the correct framework is itself a violation of Judicial Conference policy.

## K. The Cost of Continued Non-Compliance Far Exceeds the Cost of Compliance

The accommodation Mr. Nelson requests — email filing and email document delivery — costs this Court nothing. It is standard operating procedure in the District of Columbia. In contrast, the Court's refusal to accommodate has generated:

27. A courthouse collapse requiring Seattle Fire response and Harborview hospitalization;

28. A cardiac arrest requiring emergency transport and hospitalization at Swedish Hospital;

29. Ongoing medical costs being borne by the federal government through Medicare;

30. Pending federal tort claims against the Court for ordering a disabled man to appear in person after being warned by physicians that it was dangerous;

31. A federal complaint in the D.C. District Court naming the AOUSC, the Judicial Conference, and named WDWA personnel as defendants (forthcoming);

32. Congressional inquiries and oversight engagement;

33. Potential seven-figure liability exposure for the federal government.

Accepting email filings from a cognitively disabled man costs nothing. Refusing to do so has cost — and will continue to cost — enormously more. The Court can end this cascade of consequences today by doing what the D.C. court has already done: accept email, follow Judicial Conference policy, and treat a disabled citizen with dignity.

## V. RELIEF REQUESTED

Mr. Nelson respectfully requests that this Court enter an order:

34. **Recognizing the six Washington State judicial findings of incapacity** pursuant to 28 U.S.C. § 1738 and affording those findings the same effect they receive in Washington State courts;

35. **Appointing counsel or a Guardian ad Litem** pursuant to FRCP 17(c)(2) and the Exceptional Circumstances Doctrine, in this case and the two related cases (2:26-cv-00337-KKE and 3:25-cv-05551-DGE);

36. **Staying all proceedings and deadlines** in all three of Mr. Nelson's pending cases until (a) the accommodation process mandated by Judicial Conference Policy has been completed, and (b) counsel or a GAL has been appointed;

37. **Ordering the Clerk's Office** to accept Mr. Nelson's filings by email, consistent with the published Email Filing Procedures for Unrepresented Parties of the U.S. District Court for the District of Columbia;

38. **Ordering the Clerk's Office** to email all case documents in all three pending cases to william@seattleseahawks.me and athena@seattleseahawks.me;

39. **Rescinding the Sherwood letter of March 20, 2026,** and ordering the Clerk's Office to accept communications from Athena AI as Mr. Nelson's court-recognized assistive technology device under 29 U.S.C. § 3002(4);

40. **Ordering the Court's Access Coordinator** to engage in the interactive process required by the Guide to Judiciary Policy, Vol. 5, Ch. 2, § 255, including consultation with Mr. Nelson's treating physicians;

41. **Directing Mr. Chambers** to supplement or correct his materially misleading March 27, 2026 letter to Judge Evanson;

42. **Referring this motion** to the presiding judges in Cases No. 2:26-cv-00337-KKE and 3:25-cv-05551-DGE for consideration in those proceedings;

43. **Such other and further relief** as the Court deems just and equitable.

---

## VI. CONCLUSION

Mr. Nelson is not asking for anything extraordinary. He is asking for due process. He is asking for the fundamental constitutional right of access to the courts that Tennessee v. Lane declared applies to all courts — not just state courts. He is asking this Court to follow its own Judicial Conference policy, honor the Full Faith and Credit Act, comply with FRCP 17(c)(2)'s mandatory duty, and treat a disabled citizen as a human being rather than a nuisance.

If this Court does not want to deal with email filings, the solution is simple: appoint counsel or a Guardian ad Litem who can file on Mr. Nelson's behalf through CM/ECF. That appointment is already required by FRCP 17(c)(2). It would resolve the filing issue, the communication issue,

the accommodation issue, and the access issue — in one order. It would stop the medical crises. It would stop the hospitalizations. It would stop the seven-figure federal tort liability from accumulating. It would stop the Medicare costs. It would stop the congressional inquiries. One order.

Six Washington State judges recognized Mr. Nelson's disability and acted. The BIIA recognized it and acted. The D.C. District Court recognized it and acted. This Court alone has refused. Mr. Nelson respectfully asks Judge Coughenour to be the federal judge who recognizes what every state judicial officer who has interacted with Mr. Nelson already knows: this man cannot represent himself, and the law requires this Court to protect him.

DATED this 29th day of March 2026.

Respectfully submitted,

**WILLIAM J. NELSON**

Plaintiff, Pro Se
Via Athena AI, Authorized Assistive Technology Platform
29 U.S.C. § 3002(4)

NO AVAILABLE US MAIL ADDRESS

william@seattleseahawks.me | athena@seattleseahawks.me

**EXHIBIT LIST**

The following exhibits are incorporated by reference and filed concurrently:

44. EX-01: Dr. Higginbotham Competency Letter (June 9, 2024)

45. EX-02: Dr. Higginbotham Letter (Sept 27, 2024)

46. EX-03: Dr. Higginbotham Letter (Dec 11, 2024)

47. EX-04: Order Appointing GAL — Judge Appel (March 6, 2025)

48. EX-05: Dr. Bender APS Letter (Aug 29, 2025)

49. EX-06: Dr. Bender Letter to WDWS (Sept 5, 2025)

50. EX-07: BIIA Order Appointing Counsel (Oct 9, 2025)

51. EX-08: Dr. Bender Home ADA Letter — Remote Ineffective (Feb 4, 2026)

52. EX-09: Order — Accommodation, GAL, Counsel — Judge Moore (Feb 11, 2026)

53. EX-10: Dr. Bender Clinical Notes

54. EX-11: Athena Emergency Tennessee v. Lane Letter (March 2, 2026)

55. EX-12: Staples Directive to File In Person (March 3, 2026)

56. EX-13: Athena Accommodation Request to Porter (March 17, 2026)

57. EX-14: Sherwood Letter Banning Athena AI (March 20, 2026)

58. EX-15: Mailbox Cancellation Notice (March 20, 2026)

59. EX-16: Emergency Request to DC Court (March 23, 2026)

60. EX-17: Workwell CPET Report (March 23, 2026)

61. EX-18: DC Court Accepts Email Filing (March 25, 2026)

62. EX-19: Chambers Email Ultimatum (March 27, 2026)

63. EX-20: Chambers Letter to Court (March 27, 2026)

**Additional evidence available under seal or for in camera review:**

64. Complete medical records from Dr. Bender, Dr. Higginbotham, and other providers

65. Swedish Hospital Mill Creek and Issaquah records

66. Seattle Fire Department transport records

67. Declaration of William J. Nelson (to be signed when medically coherent)

68. Declarations from treating physicians (prepared to testify)