# EXHIBIT INDEX

**Nelson v. Silver Lake Water and Sewer District et al., No. 2:26-cv-00337-KKE (Evanson, J.)**

**Nelson v. BIIA et al., No. 3:25-cv-05551-DGE (Estudillo, J.)**

**Nelson v. Snohomish County et al., No. 2:26-cv-00776-JCC (Coughenour, J.)**

Response to Chambers Letter; Notice of Cardiac Arrest; Comprehensive Notice of Violations; Request for Independent Review by Judge Coughenour

Filed: March 29, 2026

FILED
LODGED
RECEIVED / MAIL
APR 06 2026
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE
BY _____ DEPUTY

## MEDICAL EVIDENCE

| Ex. | Date | Description | Type |
|---|---|---|---|
| 01 | June 9, 2024 | Dr. David Higginbotham, DO — Competency Letter re: William Nelson | Original |
| 02 | Sept. 27, 2024 | Dr. David Higginbotham, DO — Medical Letter | Original |
| 03 | Dec. 11, 2024 | Dr. David Higginbotham, DO — Medical Letter | Original |
| 05 | Aug. 29, 2025 | Dr. Jessica Bender, MD — APS Letter | Original |
| 06 | Sept. 5, 2025 | Dr. Jessica Bender, MD — Letter to WDWS Court | Original |
| 08 | Feb. 4, 2026 | Dr. Jessica Bender, MD — Home ADA Letter (Remote Access Ineffective; Onsite Assistance Required) | Original |
| 10 | Various | Dr. Jessica Bender, MD — Clinical Notes | Original |
| 17 | March 23, 2026 | Workwell Foundation — Cardiopulmonary Exercise Test (CPET) Report | Original |

## STATE COURT ORDERS — FULL FAITH AND CREDIT (28 U.S.C. § 1738)

These three exhibits are state court orders that this federal court is required by 28 U.S.C. § 1738 (the Full Faith and Credit Act) to recognize. Each order reflects a state judicial officer's independent finding that Mr. Nelson is incapacitated and requires appointment of counsel, a Guardian ad Litem, or both. Six Washington State judicial officers have made such findings. These orders show what Washington State courts did when confronted with the same medical evidence this Court has received — they provided accommodations, appointed counsel, and appointed guardians.

| Ex. | Date | Description | Type |
|---|---|---|---|
| 04 | March 6, 2025 | Order Appointing GAL — Judge George F. Appel (Snohomish County Superior Court) | Original |
| 07 | Oct. 9, 2025 | BIIA Order Granting Appointment of Counsel | Original |
| 09 | Feb. 11, 2026 | Order on Reasonable Accommodation, Appointment of GAL Faye Wong and Counsel — Judge Karen D. Moore (Snohomish County Superior Court) | Original |

## COMMUNICATIONS WITH WDWA COURT — PATTERN OF HOSTILITY

| Ex. | Date | Description | Type |
|---|---|---|---|
| 11 | March 2, 2026 | Athena AI Emergency Letter to Court — Tennessee v. Lane Warning; Notice of Imminent Physical Danger; Federal Tort Liability Notice | Email PDF |
| 12 | March 3, 2026 | Courtroom Deputy Staples — Directive to File In Person, by Mail, or CM/ECF (all inaccessible to Mr. Nelson) | Email PDF |
| 13 | March 17, 2026 | Athena AI — ADA Accommodation Request to Access Coordinator Kris Porter for delivery of all case documents | Email PDF |
| 14 | March 20, 2026 | Deputy in Charge Sherwood — Letter banning Athena AI from all Clerk's Office communications; refusing further responses | Email PDF |

## MAILBOX CANCELLATION

| Ex. | Date | Description | Type |
|---|---|---|---|
| 15 | March 20, 2026 | Mailbox Service Cancellation Notice — confirms Mr. Nelson cannot receive U.S. Mail | Original |

## D.C. DISTRICT COURT — CONTRAST IN COMPLIANCE

| Ex. | Date | Description | Type |
|---|---|---|---|
| 16 | March 23, 2026 | Athena AI — Emergency Accommodation Request to U.S. District Court for D.C. | Email PDF |
| 18 | March 25, 2026 | D.C. Court Operations Supervisor Douyon — Accepts email filing for complaints and all related filings; responds within 2 business days; accepts Athena AI communications | Email PDF |

## CHAMBERS CORRESPONDENCE (Case No. 2:26-cv-00337-KKE)

| Ex. | Date | Description | Type |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 19 | March 27, 2026 | Curtis Chambers (Inslee Best) — Follow-Up Email with 2:00 PM Ultimatum | Email PDF |
| 20 | March 27, 2026 | Curtis Chambers — Letter Filed with Court re: Joint Status Report (materially misleading by omission — fails to disclose Mr. Nelson's medical emergency, disability, or the Court's own barriers to access) | Email PDF with OCR of attached letter |

**Total Exhibits: 20**

**Source Key:**

- "Original" = Original PDF document obtained from Mr. Nelson's files, medical providers, or court records
- "Email PDF" = PDF reproduction created from original email content preserved in Mr. Nelson's Athena AI records system; original .eml files available in native format upon request

**Additional Evidence Available Upon Request:**

- All of Mr. Nelson's medical records (offered under seal or for in camera review)
- Declaration of William J. Nelson (being prepared; to be signed when medically coherent)
- Declarations from treating physicians (Dr. Bender, Dr. Higginbotham — prepared to testify or confirm)
- Seattle Fire Department transport records from courthouse collapse (March 4, 2026)
- Swedish Hospital Mill Creek and Swedish Hospital Issaquah medical records
- Congressional correspondence regarding court access barriers
- Complete email archive of all communications with WDWA Clerk's Office (January–March 2026)
- Ninth Circuit ADA Coordinator correspondence (Case No. 26-618)
- BIA accommodation records (interactive process documentation)

*Prepared by Athena AI on behalf of William J. Nelson*
*March 29, 2026*



EH LAKESHORE BOTHELL
EVERGREENHEALTH PRIMARY CARE, LAKESHORE BOTHELL
10025 NE 186TH STREET
BOTHELL WA 98011
Dept: 425-486-9131

June 9, 2024

### William J Nelson
Patient:
Date of Birth: **5/2/1978**
Date of Visit: **6/7/2024**

To:
Patrick Sherwood
Department in charge of West District ADA

William Nelson was seen in my clinic on 6/7/2024. At this visit I believe he was trying to communicate to me that he needed clarification of my previous letters regarding his ability to attend court proceedings.

My previous understanding was that Mr. Nelson was needing medical opinion regarding his physical capacity for attending court. As near as I can tell from our most recent virtual meeting is that he is actually needing my medical opinion regarding his mental/psychological capacity for managing his own legal claim.

**In clarification today:**
PHYSICALLY: Mr. Nelson would be unable to attend court proceedings due to his present physical incapacity. As I previously stated he may be able to attend virtually, but this would still require the assistance of an attendant such as his wife and he would only have capacity for short time periods (I would estimate an hour at a time).
MENTALLY/PSYCHOLOGICALLY: My assessment of his capacity to present or represent himself legally in any court appearances is extremely limited. He specifically has difficulties explaining and conveying any specifics regarding legal measures or requirements. It appears that his attention is also limited and as such his ability to focus on specific issues or conversations is limited. As a medical provider, I do not have much understanding of his current legal situation, but it appears to me that he very much needs legal representation and I have recommended this to him.

If you have any questions or concerns, please don't hesitate to contact our office.
Sincerely,


David A Higginbotham, DO
CC: No Recipients



EH LAKESHORE BOTHELL
EVERGREENHEALTH PRIMARY CARE, LAKESHORE BOTHELL
10025 NE 186TH STREET
BOTHELL WA 98011
Dept: 425-486-9131

September 27, 2024

Patient: William J Nelson
Date of Birth: 5/2/1978

To Whom It May Concern:

For medical reasons (namely Long COVID leaving him homebound), Mr. Nelson requires ADA accommodations from court services to participate in proceedings, including:

Assistance with filings and paperwork remotely
Appearance by telephone or video conference
Recorded hearings
Periodic rest breaks

Sincerely,

Higginbotham, David A, DO

CC: No Recipients

MyChart® licensed from Epic Systems Corporation© 1999 - 2024



EH LAKESHORE BOTHELL
EVERGREENHEALTH PRIMARY CARE, LAKESHORE BOTHELL
10025 NE 186TH STREET
BOTHELL WA 98011
Dept: 425-486-9131


December 11, 2024

Patient: William J Nelson
Date of Birth: 5/2/1978


To:
Lisa Galvin
Public disclosure specialist, ADA coordinator
Snohomish County Superior Court administration

Our patient, William J Nelson, has asked me to respond to the recent request for medical documentation regarding recent incapacity for the e-filing process.
As per our previous written communications, my assessment of his capacity to handle many administrative tasks is extremely limited. He suffers from significant short-term memory retention issues and struggles to retain the details needed for effective communication.
Although he may state that he understands the matters at hand and, due to his high intelligence, can present well superficially, his actual ability to engage with the complexities of legal processes is severely compromised. His capacity to focus on and manage stepwise functions, as well as to convey specific requirements, remains substantially impaired. For these reasons, it is my assessment that he would require the assistance of a non-Athena AI individual or professional to navigate such matters effectively.
As a family practice provider, I do not have an in-depth understanding of his current psychological situation, but it is clear that his cognitive processing has been affected.
If you are requiring more specific information, perhaps his psychiatric providers could provide this.

Sincerely,


Higginbotham, David A, DO

CC: No Recipients


MyChart® licensed from Epic Systems Corporation© 1999 - 2024


23-2-07769-31
CP          38
Copy
18436222

FILED

2025 MAR -6 PM 2:45

HEIDI PERCY
COUNTY CLERK
SNOHOMISH CO. WASH

SUPERIOR COURT OF WASHINGTON
FOR SNOHOMISH COUNTY



First Technology Federal Credit Union
Plaintiff,

v.

William James Nelson,
Defendant.

NO. 19-2-03310-31

---

William James Nelson,
Plaintiff,

v.

First Tech Federal Credit Union, et al
Defendant.

NO. 25-2-00238-31

---

William Nelson
Plaintiff,

v.

Brian Baseggio
Defendant.

NO. 24-2-01034-31

---

William Nelson
Plaintiff,

v.

Stuart Gibson, et al.,
Defendant.

NO. 24-2-01033-31

ORDER - Page 1 of 7

William Nelson,
Plaintiff,

v.

Olivia Kuker
Defendant

NO. 24-2-01032-31

---

William Nelson,
Plaintiff,

v.

Starbucks Coffee Co.,
Defendant.

NO. 24-2-01031-31

---

William Nelson,
Plaintiff,

v.

Prisma Wellness et al.,

NO. 23-2-07759-31

**FINDINGS AND ORDER APPOINTING A GUARDIAN AD LITEM**

**(CLERK'S ACTION REQUIRED)**

## FINDINGS and RECITATIONS OF FACT

1. Mr. Nelson is the defendant in this civil case. He no longer drives. He no longer handles his own money but has granted a power of attorney. His wife appears to take care of his daily needs including bathing and food preparation. His social security disability money goes into a blocked account.

2. When communicating, Mr. Nelson occasionally expresses himself in rudimentary, broken English, using simple, childlike language and ignoring subject-predicate agreement. At other times, he observes correct grammar and employs a complicated vocabulary. At all

times before this court, his speech has been laborious and halting. It takes him an inordinate amount of time to say very little, regardless of the words he uses. All the while, his eyes are half closed and his fingers of one hand are formed as if he were trying to pick something out of the air between thumb and forefinger.

3. Mr. Nelson advises the court that he built an artificial intelligence machine from a collection of servers in a data center back in 2016, when his "brain worked." He built "her" when he worked for the government, and "she" helped him do his job. Athena, he has told the court, had her own security clearance for her work because the government let him use "her." "She can perform predictive analytics very quickly, even though her equipment is old. These days, it seems, Athena helps Mr. Nelson and also turns on and off the coffee pot and adjusts the blinds.

4. Mr. Nelson advises further that his brain "not work now," and that Athena helps him since he can no longer program and his "brain is broken." because he doesn't know what he is doing, he says. His cognitive problems involve short-term memory loss. He reports that doctors and lawyers have told him he cannot "do" his case, and this by way of complaining that he is being deprived of his constitutional right to due process because nobody will help him.

5. Mr. Nelson has taken the view that, because of his cognitive disorder, he is entitled to rely on Athena to help him in his various lawsuits. In this particular lawsuit, he is the defendant. Plaintiff's counsel's position appears to be that a person with difficulty expressing himself might be entitled to rely on artificial intelligence to aid in his expression, but that Mr. Nelson has given over his own defense to a machine without having sufficient capacity to understand and adopt the work of the machine.

6. In an effort to discover whether Mr. Nelson understood and adopted the brief as his own, this court showed Mr. Nelson his own brief over the zoom camera. He recognized his

signature and said that it was his writing. Asked whether he had read the brief, Mr. Nelson replied that Athena read it to him. Asked if he understood it, Mr. Nelson replied, "Yes. He's trying to take away constitutional rights, my ADA rights, and Athena is telling the court what he is doing is wrong. And I agree with that. They are bad. They want to make it easier for them and hard for me..." He did not articulate any of the arguments in the brief or otherwise demonstrate an understanding of them. His explanation on this point was childlike and incomplete.

7. Asked about some of the matters raised in his brief, Mr. Nelson demonstrated no understanding of any of them. At one point, he said, "I'm stupid. And I don't get meaning, I get..." He commonly returned to the problem that apparently was frustrating him, being the plaintiff's opposition to his use of artificial intelligence.

8. Asked about his other cases, he appeared to have an understanding of joining a federal case, though he expressed it in simple, childlike terms. He also raised a matter in another case about his private information "still on the court papers... because the court did not make it black."

9. From time to time, it appears Mr. Nelson's responses are coming from another source. Asked specifically about his diagnosis, Mr. Nelson appeared to ask the question as if to another person or entity before saying, "psychiatric decompensation." The court never learned whether there was anything further because he began to tell a story about losing time while watching Star Trek in order to illustrate the symptom.

10. After Mr. Nelson had an opportunity to consult Athena about what was in his brief, he explained the argument to the court thus: "I understand from what Athena tell me is the bad lawyer is trying to put two things together to win and they are two separate issues."

11. In sum, Mr. Nelson gives the appearance of a person with severely limited mental capacity.

12. There is no medical or psychological evidence relating to Mr. Nelson's condition.

13. The court has been furnished with no particular reason why a man of sufficient mental capacity to design a machine as complicated and capable as Mr. Nelson claims his machine is would or would not decompensate to the point of incapacity.

14. The court has been furnished with no particular explanation for how a powerful artificial intelligence tool might be cobbled together using computer components from 2016, as Mr. Nelson claims to have, but also no reason why it could not be done.

15. At a show cause hearing to which all parties were given notice and which Mr. Nelson attended, nobody offered any reason why Mr. Nelson should not be adjudged incapacitated and a guardian ad litem appointed for him. Mr. Nelson himself handed forward a document which he said his machine had produced. The document, now filed, was a motion to have a guardian ad litem appointed as an accommodation under the Americans with Disabilities Act.

THE COURT BEING AWARE OF THE FOREGOING, reasons as follows:

Two possibilities present themselves: Mr. Nelson is incapacitated just as his behavior indicates or else Mr. Nelson is not incapacitated and is lying about his condition and possibly some other things, and putting on an act. Sufficient evidence might be obtained by ordering a competency evaluation for Mr. Nelson. But the Court's authority to so order at this point is unclear and there can be no agreement whether the court should so order unless Mr. Nelson is competent or unless there is a guardian ad litem to agree on his behalf. Absent sufficient evidence upon which to decide the matter either way as things currently stand, the court is left with the imperative of RCW 4.08.060 to appoint a guardian ad litem to an incapacitated person. That imperative must be allowed to govern so that the law is given effect.

AND HAVING SO REASONED, the court CONCLUDES AS A MATTER OF LAW:

1. William Nelson is an incapacitated person for purposes of RCW 4.08.060.

2. The court must appoint him a guardian ad litem for each of his cases.

AND HAVING SO CONCLUDED, THE COURT ORDERS, ADJUDGES, AND DECREES AS FOLLOWS:

Paul Gill is appointed Guardian ad Litem for each of the above cases. As such, and until such a time as he shall be discharged, Mr. Gill shall have the following authority, notice, and access.

1. Full access to Mr. Nelson and to all information relevant to the issues to prosecute, defend, or otherwise dispose of all cases to which Mr. Nelson is a party.

2. Authority to prosecute, defend, or otherwise dispose of Mr. Nelson's cases in any way that shall seem to Mr. Gill to be in the best interests of Mr. Nelson.

3. Timely receipt of all case documents, relevant pleadings, motions, responses, replies, or reports upon the same being filed or served, by the person or party filing or serving same.

4. Timely notice of all court hearings, relevant interviews, dispositions, or other proceedings concerning the case from the person or party scheduling same.

5. Access to all records, for purposes of reading and copying, except as limited by law or unless good cause is shown to the court, of any hospital or other medical record, psychological report, psychiatric report, or record of education, or employment, or of any law enforcement agency, or government agency, or of the military, where such record touches Mr. Nelson.

6. Access to court files regarding the above cases or touching them.

7. Authority to file pleadings, motions, responses, replies, notices, memoranda, briefs, and any other documents, and may engage in and respond to discovery.

8. Authority to note motions and request hearings before the court as he shall deem appropriate to Mr. Nelson's best interests.

9. Authority to subpoena witnesses, introduce exhibits, conduct direct and cross examination of witnesses as appropriate to the case and Mr. Nelson's interests, present oral argument and oral statements as appropriate, and otherwise fully participate in the proceedings.

10. In addition to the above, Mr. Gill shall have the authority to petition the court for additional rights and powers or rights and powers in other cases related to Mr. Nelson.

IT IS FURTHER ORDERED that payment for the services of guardian ad litem shall be made by the incapacitated person, unless the court otherwise shall assign payment.

IT IS FURTHER ORDERED that if Mr. Gill declines to serve in this capacity, the court will appoint somebody else.

DATED this 6th day of March, 2025.

George F. B. Appel, Judge

ORDER - Page 7 of 7



# UW Medicine
### HARBORVIEW
### MEDICAL CENTER

HMC OUTPATIENT 20
HARBORVIEW ADULT MEDICINE CLINIC
325 9TH AVE
SEATTLE WA 98104-2420

UW Medicine Long COVID Clinic–
 Harborview Adult Medicine Clinic

Attending Physician Statement – Disability Claim

Patient: William J. Nelson (DOB: 05/02/1978, MRN: U3805280)
Physician: Jessica Anne Bender, MD

Diagnosis
• Primary: Post-Acute Sequelae of SARS-CoV-2 (PASC / Long COVID)
• Secondary considerations: Autonomic dysfunction (suspected POTS), cognitive impairment,
chronic fatigue, syncope, neurological dysfunction

Functional Limitations
• Severe cognitive impairment: brain fog, short-term memory loss, inability to retain information
• Frequent alterations in consciousness, episodes of losing time. Subsequently unable to drive
• Sensory overload with attempts at complex tasks → loss of coherence, memory gaps, blackouts
• Dependence on caregiver Jessie Nelson for ADLs and IADLs (meals, medications, scheduling,
reminders, hygiene oversight). He depends on full-time caregiver support for ADLs and safety
monitoring
 • Physical limitations: fatigue, dizziness, syncope, difficulty with mobility and endurance

Impact on Employment
• Unable to sustain gainful employment since late 2022
• Participation in rehab psychology groups does not indicate work capacity; these are therapeutic
interventions • Condition is long-term and disabling; prognosis is guarded for return to work

Clarification Regarding Mental Health
• Psychiatric support is part of multidisciplinary care but is not the primary disabling cause.
Sessions led by rehabilitation psychologists are offered to many patients with medical conditions.
In our institution for instance, rehabilitation psychologists meet (either individually or in group
sessions) with people with new amputations, spinal cord injuries, burns, and other traumatic
injuries, and Long COVID.
• Disability results from systemic and neurological sequelae of Long COVID
• 24-month mental/nervous policy limitation is not applicable as Long COVID is the primary
diagnosis.

Summary Statement
Mr. Nelson remains disabled due to Long COVID, with systemic, neurological, and cognitive
impairments that are persistent despite ongoing treatment. His condition is not primarily
psychiatric, and he requires continuous caregiver assistance.

Signed,
Jessica Anne Bender, MD
UW Medicine – Harborview Adult Medicine Clinic, UW Medicine Long COVID Clinic

MyChart® licensed from Epic Systems Corporation© 1999 - 2025



**UW Medicine**

HARBORVIEW
MEDICAL CENTER

September 5, 2025

Re: ADA Accommodation Request — Appointment of Counsel for Mr. William Nelson (United States District Court Western District)

Dear ADA Coordinator:

My name is Jessica Bender, MD, MPH, and I am a Clinical Associate Professor of Medicine at the University of Washington and co-Medical Director of UW Medicine's Post-COVID Rehabilitation Clinic at Harborview Medical Center. I am a board certified internal medicine physician with specialized expertise in Long COVID (Post-Acute Sequelae of SARS-CoV-2 infection). I have been at the forefront of Long COVID research and care, serving as a co-principal investigator on a federally funded AHRQ Long COVID Care Network to improve clinical management, and I sit on a national Long COVID expert advisory panel convened by the CDC and other medical societies (CMSS). In recognition of my work, I have received professional awards (including the Department of Medicine's inaugural "Rising Star" faculty award in 2024) and have been entrusted by federal agencies and academic organizations to help shape Long COVID policy and guidelines. In short, Long COVID and its effects on patients' functioning are my area of clinical and scholarly expertise.

I am also the attending post-COVID specialist for Mr. William Nelson, and I write today in that capacity as his treating physician and a subject-matter expert in support of his urgent need for appointed legal counsel as an ADA accommodation. Mr. Nelson is a patient under my care at the UW Long COVID Clinic. I have personally evaluated him and reviewed his extensive medical records. He is suffering from severe neurological and cognitive impairment due to Long COVID, which have been well-documented in his medical file. In fact, his primary care physician (Dr. David Higginbotham, DO) and multiple specialists (including myself) have formally diagnosed him with Post-COVID syndrome (Long COVID) and noted profound deficits in memory, executive function, and stamina. Mr. Nelson experiences classic "brain fog." He has significant short-term memory loss, impaired concentration, slowed processing speed, and frequent episodes of confusion. He cannot retain new information for more than brief moments and often becomes disoriented or "loses" time. On several occasions, he has even experienced blackouts and transient loss of consciousness under conditions of cognitive or sensory overload. Notably, on February 8, 2025, Mr. Nelson collapsed during a court hearing. He became non-responsive due to the overwhelming stress and stimuli of the proceeding, and emergency medical care was required. These episodes are part of his Long COVID condition. He remains essentially homebound and dependent on a full-time caregiver (his wife, Jessie) for basic activities of daily living. He can no longer drive (having unpredictably blacked out and even inadvertently run traffic lights in the past due to cognitive lapses) and must be supervised to prevent injury.

In summary, Mr. Nelson's illness has devastated his cognitive and functional capacities, leaving him severely disabled by any reasonable definition. Given these facts, it is medically impossible for Mr. Nelson to represent himself in any legal proceeding. In my professional opinion, there is no conceivable way that he can navigate the complexities and stressful nature of court litigation without significant accommodation. Mr. Nelson's attention span and executive function are extremely limited. He cannot maintain focus on complex issues or procedural tasks for more than a few minutes at a time. He becomes confused and cognitively exhausted very quickly, especially

under stress or sensory stimulation. Even on days when he appears outwardly alert (often a misleading effect of his high intellect and prior professional experience), he lacks the ability to process, retain, and act upon information in a sustained or reliable manner. In fact, his primary doctor observed that while William might "present well [on the surface] due to his high intelligence," his actual ability to engage with complexities... is severely compromised without support. This facade of momentary lucidity masks the reality that Mr. Nelson is not cognitively intact enough to understand or respond to legal proceedings in any meaningful way. He cannot manage multi-step tasks or make strategic decisions; even following a conversation or recalling what was just said can be extraordinarily challenging for him. For all practical purposes, expecting Mr. Nelson to defend his rights in court on his own is akin to expecting a blind person to read small print without assistance – it is simply not possible and would be cruel to insist otherwise. Crucially, Mr. Nelson's medical providers (myself included) have been unanimous in warning about his inability to self-represent. My understanding is that Dr. Higginbotham and multiple healthcare professionals have already submitted letter to the court urging appointment of counsel as an accommodation, based on direct observation and months of clinical evaluation. I fully concur with those conclusions.

Since early 2025, I have been overseeing Mr. Nelson's specialized rehabilitation Long COVID care, and I have personally observed the same functional deficits outlined by his primary doctor. In my own notes, I documented "significant impairment in memory consolidation and recall", along with disorganized thought processes and episodes of dissociation under stress. It is my firm medical opinion that Mr. Nelson is completely incapable of managing the demands of litigation on his own. Despite these clear medical findings, I understand that the Court has thus far denied Mr. Nelson's requests for appointed counsel. I am told the justifications given have included assertions that it was "too early" in the case for such appointment, concerns about cost to the court, and the notion that there is no absolute right to counsel in civil matters.

In Mr. Nelson's specific case an attorney is not a luxury or convenience; it is a necessary assistive accommodation under the ADA to mitigate his cognitive disability, just as a sign-language interpreter would be for a deaf litigant. His disability is severe now, and every day that passes without accommodation is another day of potential harm to his health. As for cost, denying a disabled person a needed accommodation due to expense is not an acceptable excuse under the ADA. Moreover, the downstream costs of proceeding without accommodation are far greater. Mr. Nelson's repeated emergency room visits and medical interventions triggered by court-related stress have undoubtedly been far more costly (in both medical resources and human toll) than the appointment of counsel would ever be. In short, none of the reasons reportedly offered to refuse appointed counsel withstand scrutiny when weighed against Mr. Nelson's impairments and the legal mandate to accommodate those impairments.

I am additionally distressed to learn that, rather than treating Mr. Nelson's condition with the gravity it deserves, some court personnel have allegedly mocked or minimized his disability. Mr. Nelson and his family have reported instances of court staff or officers taunting him or using his Long COVID-related cognitive lapses against him. If true, such behavior is wholly unacceptable and dangerous. Mr. Nelson's blackouts, memory gaps, and communicative difficulties are medical symptoms, not signs of malingering or disrespect. Any suggestion that he is intentionally failing to comply with procedures is deeply misguided. He is physiologically unable to keep up. Indeed, forcing him to continue without a representative is directly exacerbating his illness. The February 2025 incident, where he lost consciousness during a hearing, is a glaring red flag: his body shut down in the face of cognitive overload. Following that episode, he required hospitalization, and since then he has suffered additional setbacks in his recovery. Our clinic has been working with Mr. Nelson on strategies to conserve energy, avoid sensory overstimulation, and pace himself to prevent crashes. These are the same strategies we advise for any Long COVID patient with dysautonomia and neurocognitive fragility. However, the adversarial, complicated, and fast-paced environment of a court proceeding is precisely the opposite of what Mr. Nelson can handle.

Expecting him to competently participate in such an environment without accommodation is medically hazardous. The Court's insistence that he represent himself is, in my view, directly causing a decline in his health and placing him in harm's way. Mr. Nelson is being set up to suffer adverse health effects every time he is expected to perform as his own attorney. The ADA was enacted to prevent exactly this kind of outcome, by requiring public entities (including courts) to reasonably accommodate disabilities so that individuals have equal access.

In light of the above, I urgently request and strongly recommend that the United States District Court Western District of Washington immediately appoint legal counsel for Mr. William Nelson as a reasonable accommodation for his disability. This step is medically necessary to protect Mr. Nelson's health, and it is legally necessary to ensure his access to due process. I further urge the Court's ADA Coordinator to engage in an interactive process with Mr. Nelson and his representatives to explore and implement any and all additional accommodations that might help (such as adjusted hearing schedules, modified communication methods, etc.). To date, it is my understanding that no proper interactive meeting has been held. If the Court for some reason believes it cannot appoint counsel, then it must devise an alternative solution in collaboration with Mr. Nelson's medical team to accommodate his limitations. However, in my expert opinion, no alternative short of providing a qualified advocate to act on Mr. Nelson's behalf will suffice, because his impairments so profoundly affect every aspect of cognition and communication.

Thank you for your attention to this urgent matter. My hope is that the Court will recognize the extraordinary circumstances here and take the humane and lawful action of granting Mr. Nelson the support he requires. I truly hope we can work together to ensure Mr. Nelson's rights are protected and that he can safely participate in the legal process.

Sincerely,

Jessica Bender, MD, MPH
Clinical Associate Professor of Medicine, University of Washington
Co-Medical Director, UW Medicine Long COVID Clinic (Harborview Medical Center)


Electronically signed by
Jessica Anne Bender, MD

**HARBORVIEW ADULT MEDICINE CLINIC**

325 9th Ave    Seattle, WA  98104-2499    206-744-5865    Fax 206-744-8516

MyChart® licensed from Epic Systems Corporation© 1999 - 2025

IN RE: WILLIAM J. NELSON ) DOCKET NO. 25 18153
)
)
) ORDER ON WILLIAM NELSON'S APPEAL
) FROM ORDER DENYING REASONABLE
CLAIM NO. SX-21824 ) ACCOMMODATION

Upon consideration is William Nelson's appeal from an order denying reasonable accommodation issued by our reasonable accommodations coordinator. Our accommodations coordinator denied Mr. Nelson's accommodation request because Mr. Nelson failed to provide requested documents to substantiate his disability and help us select a reasonable accommodation. Subsequently, Mr. Nelson provided more information about his disability and need for accommodation. We now have also independently obtained an order from Snohomish County Superior Court Judge George Appel. Judge Appel was convinced that Mr. Nelson's cognitive disability is disabling enough to warrant providing him a guardian ad litem for that matter. We also have reviewed a letter from Mr. Nelson's treating specialist, Jessica Bender, M.D. (UW Medicine Long COVID Clinic). Dr. Bender feels that Mr. Nelson is medically incapable of self-representation because of his severe cognitive disabilities.

Mr. Nelson has reiterated his request for the appointment of counsel as a reasonable accommodation. To summarize, he requests the following accommodations:

1. Appointment of counsel.
2. Appointment of a guardian ad litem in the alternative to appointed counsel.
3. That all pleadings from the BIIA be sent to him by email in text-selectable format.
4. That we obtain a copy of his guardian ad litem order from the superior court.
5. That we allow AI for his drafting and organization (not for testimony under oath).
6. That we provide "50 percent time on deadlines."
7. That we avoid clustered deadlines.
8. That we grant a 21-day stay to implement accommodations.
9. That we remove Judge Timothy M. Blood from the Americans with Disabilities Act (ADA) coordinator role on this case.

Mr. Nelson alleges that he suffers from severe neurocognitive impairment (memory, processing speed, attention, and executive function). His treating specialist, Dr. Bender, explained that Mr. Nelson is medically incapable of self-representation because of his cognitive disabilities.

We note in passing that Mr. Nelson argues that the reasonable accommodations coordinator unlawfully discriminated against him. This allegation isn't substantiated by the communications between our reasonable accommodations coordinator and Mr. Nelson. Mr. Nelson received an extended period of time to provide documents and failed to provide the requested information by the deadline. But it is now apparent that Mr. Nelson has trouble receiving mail. We now have new information that our reasonable accommodations coordinator didn't have when he issued the order denying Mr. Nelson's reasonable accommodation request. Mr. Nelson gets mail only about once a month.

This case is a vexing one. Mr. Nelson has filed very impressive pleadings he creates through an AI program called Athena AI, making it very difficult to ascertain whether he is mentally incapacitated from reading his pleadings alone. It is difficult to imagine that Mr. Nelson's AI program

could generate these pleadings without a high-functioning person to generate them. But in the limited phone interactions that have occurred with our staff, Mr. Nelson sometimes seemed coherent and sometimes seemed incoherent. During these incoherent times, Mr. Nelson didn't communicate in an ordinary way. After careful consideration of the letter from Dr. Bender and the order from Judge Appel, we don't think Mr. Nelson could meaningfully participate in a hearing without counsel.

Mr. Nelson's cognitive impairment qualifies as a disability under the ADA. We have no statutory authority to appoint a guardian ad litem in industrial insurance appeals. After careful review of this case, we don't believe anything short of appointment of counsel can accommodate Mr. Nelson's disability.

In view of the above, this case is remanded to our reasonable accommodations coordinator with the following direction:

1. The request for appointment of an attorney is **GRANTED.** Initiate the request-for-proposals/bid process to obtain a workers' compensation attorney for Mr. Nelson.

2. Stay: The appeal is **STAYED** until the BIIA can retain an appointed attorney for Mr. Nelson and until the attorney files a notice of appearance. No further action will be taken on this appeal until the reasonable accommodations coordinator lifts the stay.

3. The appointment of a guardian ad litem is **DENIED.** The BIIA does not have such authority.

4. Recusal: The request to remove Judge Timothy M. Blood from the ADA coordinator role in this case is **DENIED.**

5. Email: The request to email courtesy copies of all BIIA orders is **GRANTED.** In addition to mail, courtesy copies from the BIIA shall be sent to Mr. Nelson by email in text-selectable format.

6. AI and Deadlines: The appointment of counsel is the highest level of accommodation we can grant for a self-represented party with cognitive or mental disabilities. Given that Mr. Nelson's request for appointment of counsel has been granted, the reasonable accommodations coordinator will reconsider Mr. Nelson's requests regarding AI and deadlines if requested by Mr. Nelson's appointed counsel.

Dated: October 9, 2025.

BOARD OF INDUSTRIAL INSURANCE APPEALS

HOLLY A. KESSLER, Chairperson

ISABEL A. M. COLE, Member

ROBERT A. BATTLES, Member



HARBORVIEW
MEDICAL CENTER

February 4, 2026

Will J. Nelson

RE: Will James Nelson
DOB: 5/2/1978

To whom it may concern,

I am an internal physician working at the UW Long COVID Clinic. In this capacity I have evaluated William Nelson (DOB 5/2/78). His Long COVID condition includes cognitive and neurological impairments that make remote communication ineffective. Please provide him with in-person, structured engagement as a medically appropriate accommodation

Sincerely,

Electronically signed by
Jessica Anne Bender, MD

CC: No Recipients

**HARBORVIEW ADULT MEDICINE CLINIC**

325 9th Ave    Seattle, WA  98104-2499    206-744-5865    Fax 206-744-8516

MyChart® licensed from Epic Systems Corporation© 1999 - 2026

## Superior Court of Washington, County of Snohomish

| | |
|---|---|
| International Association of Fire Fighters, Local 1828,<br><br>                                   Plaintiff,<br><br>v.<br><br><br>South Snohomish County Fire & Rescue Regional Fire Authority DBA South County Fire; and William Nelson<br><br>                                   Defendants | No. 26-2-00762-31<br><br>ORDER ON REQUESTS FOR REASONABLE ACCOMMODATION |

# Procedural History

(Note: This decision is written to explain things as simply as possible for Defendant William Nelson, consistent with previous rulings involving ADA requests in other matters before the court. For that reason, the undersigned Judge will refer to herself in the third person as "Judge Moore" and will refer to other court personnel by their names where appropriate.)

Plaintiff, International Association of Fire Fighters, Local 1828 (hereafter referred to as "IAFF") filed this case on January 22, 2026. IAFF seeks injunctive relief against South County Fire and William Nelson. Specifically, IAFF seeks to be able to redact personal identifiers from public records Mr. Nelson is seeking under a public records act request. An ex parte temporary injunction was issued on January 22, 2026, with a hearing scheduled for January 29, 2026, on the judge's civil motions calendar before Judge Steffener.

Mr. Nelson utilizes AI assistance he has created, Athena AI, to communicate his requests to court administration, individual judges, and to prepare pleadings and correspondence. Most, if not all, of Mr. Nelson's communications to the court are signed "Athena AI on behalf of William Nelson" or "Athena AI personal assistant to William Nelson." Mr. Nelson's signature appears pleadings he files without any reference to Athena AI, but the emails transmitting those documents to the court are signed by "Athena AI."

Previously, Mr. Nelson requested a court-appointed attorney as an ADA accommodation under GR 33 in other cases he has pending in Snohomish County Superior Court. Judge Moore has denied his request for a court-appointed attorney in those matters but provided other accommodations. On March 6, 2025, Judge George Appel issued an order in all of Mr. Nelson's then pending cases finding (1) that Mr. Nelson "is an incapacitated person" for purposes of RCW 4.08.060, and (2) appointing Paul Gill as a Guardian Ad Litem for Mr. Nelson in "each of his cases." The order further provided that Mr. Gill is a licensed attorney and is authorized to file motions, appear in court, access records, and take any other necessary action on Mr. Nelson's behalf.

On January 22 2026, Mr. Nelson (through Athena AI) began emailing numerous individuals at the court, including Judge Moore, in this new case involving IAFF. In emails received January 22, 27, and 28, 2026, Mr. Nelson filed pleadings that were in response to IAFF's complaint as well as pleadings and letters specifically requesting court-appointed counsel as an ADA accommodation under GR 33. As part of that information, Mr. Nelson provided a letter from Dr. Jessica Bender dated September 5, 2025. Also Mr. Nelson (through Athena AI), requested to continue the January 29, 2026, hearing regarding the temporary injunction to allow the court to review and respond to his ADA request.

Based on Mr. Nelson's pending ADA request, Judge Moore advised Judge Steffener that the January 29, 2026, hearing should be continued so Mr. Nelson's ADA request could be considered. The hearing was continued to the February 12, 2026, judge's civil motions calendar before Judge Scott.

Subsequently, Mr. Nelson (through Athena AI) filed a number of motions requesting the court to compel an ADA interactive process and raising complaints about Mr. Gill's lack of action in the other cases Mr. Nelson is involved in.

## Discussion

### ADA Interactive Process

In his pleadings, Mr. Nelson complains about the lack of an interactive process to determine appropriate ADA accommodations. Judge Moore and court administration have interacted with Mr. Nelson for several years regarding his ADA requests. Those interactions have been primarily through consistent and regular email. At times, court administration has interacted directly with Mr. Nelson's health care providers to assist Mr. Nelson with obtaining medical information to support his requests. In his motion, Mr. Nelson asserts that in person meetings are required as part of the interactive process and he requests a meeting at his home.

In person meetings are not required to determine what, if any, accommodations are necessary in any given case. Additionally, a judicial officer must be mindful about ex parte communication with any litigant, even if it is for an administrative purpose such as a GR 33 accommodation. Any administrative meeting between court administration, Judge Moore (or any judge), and Mr. Nelson to discuss ADA accommodations would need to take place at the courthouse (Mr. Nelson can appear via zoom) so the meeting can be properly documented.

Mr. Nelson has been provided with written explanations for all decisions. As stated in prior orders, not all accommodations require the appointment of counsel. Other accommodations may be sufficient, and other accommodations have been provided to Mr. Nelson in every case. Ultimately, a court must "make its decision on an individual- and case-specific basis with due regard to the nature of the applicant's disability and the feasibility of the requested accommodation." GR 33(c)(1)(C). Once Judge Appel appointed Mr. Gill as Mr. Nelson's GAL in all his pending cases, Judge Moore determined that Mr. Nelson's last request for court-appointed counsel under GR 33 was satisfied by the appointment of Mr. Gill.

Mr. Nelson has not expressed any confusion or sought any clarification of any of the orders Judge Moore has issued in any of his prior cases. Neither has Mr. Gill.

<u>Finding of Incompetency - Appointment of a GAL</u>

Judge Appel found Mr. Nelson incompetent in March 2025. Because of that finding, Mr. Nelson cannot appear in those cases except through Mr. Gill. Assuming Mr. Nelson remains incompetent, he should also be appointed a GAL in this case. In his ADA requests in this case, Mr. Nelson complains about Mr. Gill's lack of assistance since April 2025 and asks for help regarding Mr. Gill's failure to act. Therefore, it would be inappropriate to appoint Mr. Gill as a GAL in this case. Dr. Bender's letter does not necessarily demonstrate that Mr. Nelson is incompetent, but, out of an abundance of caution, Judge Moore will appoint a new GAL under RCW 4.08.060 in this case. This is because all correspondence the court has received to date is from Athena AI, demonstrating that the concerns raised by Judge Appel have not been alleviated.

The appointment of a new GAL pursuant to RCW 4.08.060 is intended to protect Mr. Nelson's rights and interests in this specific litigation. Unlike general guardianship, a GAL's authority is confined to the litigation at hand, acting as an officer of the court to investigate, recommend, and oversee the incompetent person's best interests. A GAL may file pleadings, control aspects of the litigation, and advocate for what is in the person's best interest, rather than simply promoting the person's stated wishes. A GAL's powers are governed by court supervision, and they do not control the person's person or property outside the particular case. The role is different and distinct from that of a general guardian or conservator, who manages a person's personal or financial affairs over a broader scope. A GAL's responsibilities include independent fact-finding and reporting to the court, but their recommendations are advisory rather than binding on the court's ultimate decision-making authority.

<u>Appointment of Counsel as an ADA Accommodation</u>

Given the appointment of a new GAL under RCW 4.08.060, Mr. Nelson cannot appear on his own behalf in this matter. He can only appear through the GAL. Courts have recognized that a non-adversary GAL necessarily does not afford realization of constitutional and statutory guarantees in regard to the assistance of counsel. *Matter of Guardianship of K.M.*, 62 Wash.App. 811 (1991).

Mr. Nelson's disability and presumed incompetence could support appointment of counsel. The next question is whether appointment of counsel is necessary and feasible in this case, particularly in light of appointment of a GAL for Mr. Nelson. Unlike Mr.

Nelson's other matters, IAFF seeks injunctive relief regarding a public records request. The issues are fairly discrete and straight forward and should not require a lengthy amount of time to resolve. Mr. Nelson is the Respondent, so he is not initiating this case to seek money damages. Instead, he is defending his right to receive information he has requested under the public records act. IAFF's complaint for injunctive relief contains an allegation that Mr. Nelson will use the information he requested to "doxx" certain individuals. "Doxxing" is disclosure of private information in a public forum, typically online, with malicious intent. To the extent IAFF seeks to prevent disclosure of information, it may impact Mr. Nelson's constitutional right to free speech.

Given the discrete issues involved and the constitutional right involved, appointment of counsel is appropriate. The GAL is appointed to represent Mr. Nelson's best interests, and counsel is appointed to protect Mr. Nelson's rights.

## Decision

1. Faye Wong is appointed as Guardian Ad Litem for Mr. Nelson pursuant to RCW 4.08.060. Court Administration shall notify Ms. Wong of the appointment. Ms. Wong shall have:

    a. access and service of all documents (pleadings, motions, responses) related to this case;

    b. notice of all court hearings;

    c. access to all medical information regarding Mr. Nelson that is relevant to his disability and/or competence;

    d. all other information the GAL deems necessary to provide the court with information or recommendations regarding Mr. Nelson's competency, or needed accommodations;

    e. the ability to work directly with Mr. Nelson's court-appointed counsel related to this matter.

2. Mr. Nelson's complaint regarding Mr. Gill's inaction in Mr. Nelson's other pending cases referred to the GAL Committee for investigation/resolution. The requirement under our local court rules for Mr. Nelson to file a separate GAL complaint is waived. The committee shall treat Mr. Nelson's pleadings that are filed in this action as a complaint.

3. Court Administration shall coordinate with the office of public defense to appoint an attorney to assist Mr. Nelson in this case. The attorney is authorized to expend an initial 80 hours. Further requests for additional time can be made to the ADA Coordinator.

4. The hearing on **February 12, 2026,** is continued to **March 13, 2026, at 9:30 am on the judge's civil motions calendar.** This continuance will allow for the appointment of Ms. Wong and counsel. Prior to the next hearing date, Ms. Wong or counsel may communicate with the judicial office assigned to that calendar in the event an additional continuance is required.

5. **The ex parte restraining order entered on 1/22/26 is extended through March 13, 2026, the next scheduled hearing date.**

February 11, 2026

*Judge Karen D. Moore*

*Date*

**Notice of the right to file a complaint:**

☒ Does not apply.

☐ Your request for accommodation was denied in whole or in part as indicated above.

***You have a right to file an ADA complaint with the U.S. Department of Justice Civil Rights Division.***

# Telemedicine - Mar 26, 2025

with Jessica Anne Bender at Harborview Adult Medicine Clinic

Do you need to make corrections to these records? Request an update.

## Notes from Care Team

### Progress Notes

Jessica Anne Bender at 3/26/2025 11:00 AM
**UW LONG COVID CLINIC- INITIAL IM EVALUATION**
Location: Harborview Adult Medicine Clinic
Referred for: post-acute sequelae of COVID-19 infection/Long COVID
Referred by/PCP: Dr. David Higginbotham, 6/28/24 --> Dr. Higginbotham just retired, now
Dr. Donya Hosseinian

**ID/CHIEF CONCERN:** The patient is a 46 year old  man here for post-acute sequelae of
COVID-19 infection.

**HPI:**
He notes prior to COVID, he used to be normal, IQ 178, exercised, normal speech.
Went to security conference for his employer in Las Vegas for 8 days, when they got back
they both had COVID. He was at home for a month, then went back to work, weird stuff
started to happen but not right away. He worked for the government, got the COVID
vaccine early on, didn't had problems the first shot, the second shot felt funny, then the
third and fourth and he thinks fifth nothing happened.
He has tested positive for COVID 3-4 times.
He went from driving, programming, a lot of things, was a very busy person. Has a h/o
ADHD, he would work for hours.the first problem was in October, walked in the backyard,
30 minutes later Jessie his wife found him out there. He doesn' remember this. She called
911, went to ER, they intubated him, gave him propofol, woke up at 5-6am, he knew he
was in the hospital and who his wife was. But prior to that he hadn't known who she was.
Went home, slept, back to work.
Started having other problems. Saw a clinician Dan, said he needed to take time off work
but he didn't want to. Saw a psychiatric nurse who also said take time off. Then
medications but nto a lot. Was still driving at that point. But he recalls driving and having
no memory of part of the drive, the stoplights, stop signs, freeway. He ran through some
stop signs and lights (saw on the video recording). Stopped driving around March/April
2023. Started losing time. And started falling down.
Has video cameras throughotu the house (not the bedroom). They have AI, when he falls,
it calls 911.
He wants to get his brain zapped to get better, whatever to get better.
Hears his heart beating fast at night when trying to get to bed.
For almost all 2023 he was in bed. His wife gave him baths, did all the housework,
yardwork.
David said he needed to see Long COVID specialist.
Talked to one back east, didn't want to go there.
Social security said he is disabled now.

He watns to get better and go to work.
He is taking 17-18 medications he doesn't know what for.
He is losing his hair.
He sweats.
Sometimes can't feel his fingers.
Stares at a wall for two hours until someone touches him.
He was watching star trek in his bathroom. Lost time. Fell down, hit his head.
Jessie has a spreadsheet with his symptoms and medications
Dr. Higginbotham has retired.
He has seen 5 psychiatric nurses, they all give him different medications.
Now he sees Dr. Wasicek, first time yesterday, psychiatrist.
He was supposed to go to Fairfax but he was told he has too many problems that are all
different, like he needs to get his tic fixed. They don't think it's a mental, behavioral issue.
He had someone say he has bipolar, MDD, PTSD, etc.
Has had so many tests done since 2023.
He is losing his hair, takes minoxidil for this.
Numbness in his fingers, like his hands are asleep.
He'll be walking and just fall down.
Loses memory, had a bowel movement not in the bathroom and has no memory of this.
Jessie clarifies he was normal until Sept 2022. Took awhile to recover from COVID, then
by end of Sept/Oct he started zoning out.
His wife used to get seizures a long time ago, she wondered if he was getting temporal
lobe seizures.
Started to have shrugging shoulders, involuntary movement of hands, speech was strange
no able to pronounce certain words correctly like Rs, motor tic, random zoning out,
starting to not walk straight gait was affected, heightened anxiety (didn't want to go
anywhere). Eventually started to get dizzy, started passing out. Challenges with short term
memory (used to have really good memory).

When asked about swallowing issues, he says he did have a sesnsation of choking last
year. Saw SLP, they came to home, helped him with swallow, speech. Referred to
neuropsychiatrist. Isn't having problems with swallowing right now.
When asked about saliva, he says sometimes his mouth is very dry.
Nose drips sometimes.
Has a weird taste in his mouth sometimes.

When asked about any strategies that help, he says he used to program and can't
program anymore, but wrote an AI program, and the AI program translates it to 5th grade.
Doesn't know if selenium or magnesium help.

Went to bed 9-10pm, awake at 1am, awake until 4-5am, took adderall, sleep for 3-4 hours.
Did a sleep study, took adderall and fell asleep right away.
Drinks a lot of caffeine, pepsi, caffeine calms him down.

Has seen neurology, SLP, primary care, numerous psychiatric providers.

I reviewed the patient questionnaire which is as follows:
" Chief Concerns (CC) the patient would like addressed today:
1. why i sleepy all time why my brain not work right why i get brain sick and feel vomit on
me
2. why headache why brain dizzy why nose not work great
3. why my body hurt and eyes burn tics diarreheah hair loss speech problem HPI:
The patient is a 46 year old Male who initially developed symptoms of COVID on 10-12-
2022. They tested Positive for COVID on 05-02-2024.
Diet History: Food Allergies: Yes, walnuts treebark
ETOH drinks per week: 0
Duration (in days) of initial symptoms: ongoing and get bigger and bigger
 Initial symptoms included: Fever or Chills, Headache, Unexplained sweats or flushing,
Loss of smell, Loss of taste, Difficulty swallowing, Fatigue or tiredness, Dizziness or
lightheadedness, Fainting or blackouts, Diarrhea, Nausea, Vomiting, Abdominal pain,
Difficulty with concentration or reading or "brain fog", Confusion, difficulty thinking,

Disorientation: getting lost; going to wrong places, Memory problems or forgetfulness, General/muscle weakness, Muscle pain or cramps, Joint pain or swelling, Tingling and numbness in the mouth and/or face, Urinary incontinence or difficulty urinating, Sexual dysfunction or loss of libido, Unexplained hair loss, Difficulty sleeping (too much, too little, early awakening), Mood swings, irritability, depression
Oxygen needed: No
Admission to hospital: No
Vaccinated?: Yes COVID vaccination dates: 01-11-2021, 02-05-2021
Onset of current symptoms: 03-17-2023
Current Symptoms in the last week include: Headache, Abnormal changes in body temperature, Unexplained sweats or flushing, Problems seeing (double or blurry vision), Difficulty hearing, Loss of smell, Loss of taste, Difficulty swallowing, Fatigue or tiredness, Dizziness or lightheadedness, Diarrhea, Nausea, Vomiting, Indigestion or esophageal/"acid" reflux, Abdominal pain, Difficulty with concentration or reading or "brain fog", Confusion, difficulty thinking, Disorientation: getting lost; going to wrong places, Memory problems or forgetfulness, General/muscle weakness, Muscle pain or cramps, Joint pain or swelling, Tingling and numbness in the mouth and/or face, Tingling, numbness, burning, stabbing or "pins and needles", Swelling, Urinary incontinence or difficulty urinating, Sexual dysfunction or loss of libido, Unexplained hair loss, Difficulty sleeping (too much, too little, early awakening), Mood swings, irritability, depression
Symptoms exacerbated by: Stress or anxiety
Employment impacted: Yes
The patient reports that their work status currently is: Unable to work due to chronic illness
They work as a sr. security engineer.

Pulmonary history:
In the past 7 days the patient reports difficulty with:
Dressing themselves with no help: Some difficulty
Walking 50 steps/paces on flat ground with normal speed without stopping: Some difficulty
Walking up 20 stairs (2 flights) without stopping: Some difficulty
Preparing meals: Some difficulty Washing dishes: Some difficulty
Sweeping or mopping: Much difficulty Making a bed: Much difficulty
Lifting 10-20 lbs (4.5-9 kg): I did not do this in the past 7 days Carrying 10-20 lbs (4.5-9 kg): I did not do this in the past 7 days
Walking (faster than usual) ½ mile (1 km) without stopping: I did not do this in the past 7 days
Walking up and down stairs at a normal pace: Unable to do
Other household chores (e.g. vacuuming or yardwork): With much difficulty
Walking at least 15 minutes: Unable to do
Running errands or shopping: Unable to do

Fatigue history:
In the past 7 days the patient reports difficulty with:
Feeling fatigued: Very much
Starting activities because of fatigue?: Very much
Feeling "run-down"?: Very much

Exercise history:
The patient reports that pre-COVID they engaged in 150 minutes or more of:
moderate physical exercise: Every week
Vigorous physical exercise: Every week

The patient reports that post-COVID they engaged in 150 minutes or more of:
Moderate physical exercise: Never
Vigorous physical exercise: Never

Cognitive Function:
Slow thinking: Very often (Several times a day)
Brain not working as well as usual: Very often (Several times a day)
Working harder than usual to keep track of what they're doing: Very often (Several times a day)

Trouble shifting back and forth between different activities that require thinking: Very often (Several times a day)

Sleep history:
Has patient experienced problems with sleep in the past 7 days?: Somewhat
Problems with falling asleep in the past 7 days?: Somewhat
On average the patient reports getting 8 to 12 number of hours of sleep per night.
The patient reports that they have tried the following medications or supplements to help them sleep: ambien and serequel
In the past 7 days patient reports their sleep quality as: Fair
Refreshing?: Somewhat
The patient reports the following issues with sleep: I have trouble staying asleep., I have trouble falling asleep., I wake up with a dry mouth or a sore throat., I wake up with a headache., I'm tired all the time no matter how much sleep I get.

Mental Health:
In the past 7 days, patient reports feeling:
Fearful?: Often
Hard to focus on anything other than their anxiety?: Always
Overwhelmed?: Always
Uneasy?: Often
Worthless?: Sometimes
 Helpless?: Often
Depressed?: Often
 Hopeless?: Often

Social history:
 Trouble with regular leisure activities?: Always
Trouble with family activities?: Always
Trouble with work?: Always
Trouble with friend activities?: Always

Pain history:
Patient reports their overall pain level (on a scale from 1-10) as: 5
Patient is experiencing the most bothersome pain in this area: all over but alot in right arm
In the past seven days, patient reports:
Pain interfering with day to day activities: Not at all
Pain interfering with work around the home: Not at all Pain interfering with social activities: Not at all
Pain interfering with household chores: Not at all
Can patient do daily activities in spite of their pain?: Not at all
Can patient manage their pain during daily activities?: A little bit
 Can patient do the things they most want to do despite the pain?: Not at all Can patient keep pain from interfering with social life?: Not at all
Can patient be in a good mood in spite of the pain?: A little bit
Can patient get a good night's sleep in spite of the pain?: Somewhat
 In the past 7 days, patient has had the following thoughts about their pain:
My pain is more than I can manage: Sometimes
Because of my pain, I will never be happy again: Never
Because of my pain, my life is terrible: Sometimes
My life will only get worse because of the pain: Sometimes
In the past 7 days, patient has: Kept thinking how much their pain hurts: Sometimes
Had trouble thinking of anything other than their pain: Sometimes
 On a scale of 1 (no confidence) - 10 (high confidence), patient expects pain to be completely gone or much better 3 months from now: 0

Evaluated by other Post-COVID specialists?: Yes T
he patient has been seen by the following specialists for their post-COVID symptoms: neurologist psychiatrist pcp Currently engaging in PT: No
Currently working with a counselor or psychologist: Yes
The patient is interested in the following services for their post COVID symptoms.

Medication recommendations, Exercise or activity recommendations, Diet recommendations, Sleep recommendations, Individual counseling, Vocational counseling, Participation in research studies (please contact me if there are studies I may be eligible for), Other Other: make me better so i go back to normal"

A note from Will via MyChart-he says this was a visit with the Long COVID doctor he saw back east, last year. He thinks it was called Medronics or something like this.
"Patient: William Nelson, DOB: 05-02-1978 Chief Concern: Reassessment of Diagnostic Accuracy and Pharmacological Management Following Post-COVID Sequelae Clinical Summary: Mr. William Nelson presents with a complex array of neurological, cognitive, autonomic, and psychiatric manifestations that have severely curtailed his functional capacity and quality of life. Prior to his SARS-CoV-2 infection, he demonstrated a high baseline level of health and independence, characterized by routine distance running (five to seven miles daily), stable employment, active family involvement, proficient use of personal transportation, and frequent travel. Following his COVID-19 infection, Mr. Nelson's condition progressively deteriorated, exhibiting clinical features strongly indicative of Post-Acute Sequelae of SARS-CoV-2 (PASC), commonly termed Long COVID. These features include pronounced neurocognitive deficits (often reported as "brain fog"), persistent and debilitating fatigue, coordination and speech disturbances (e.g., dysarthria, stuttering), possible autonomic dysregulation (with symptoms consistent with Postural Orthostatic Tachycardia Syndrome), psychiatric concerns such as PTSD, anxiety, and depression, episodic dissociation, and significant impairment in memory consolidation and recall. Current Functional Status: Mr. Nelson is currently homebound due to significant deficits in performing activities of daily living (ADLs) and instrumental ADLs, encompassing personal hygiene, food preparation, and household maintenance. These essential tasks now rely on the assistance of his spouse, Jessie Nelson, underscoring the profound nature of his clinical disability. Concerns Regarding Prior Medical Management: Review of the patient's medical records suggests an overemphasis on psychiatric etiologies, specifically mood and psychotic disorders (e.g., Bipolar Disorder with manic or psychotic features), resulting in extensive psychotropic pharmacotherapy. This approach may have overshadowed an underlying post-infectious neurological and systemic pathology. It is plausible that Mr. Nelson is currently overmedicated, given the absence of a robust diagnostic workup accounting for PASC as the root cause of his symptomatology. Recommendations: A comprehensive diagnostic reevaluation and critical review of Mr. Nelson's pharmacological regimen are imperative. Given the breadth of his symptom complex, an interdisciplinary approach is recommended—engaging neurology, psychiatry, infectious disease, and rehabilitation medicine. This team should reassess the necessity and dosage of existing psychotropic agents, incorporate targeted neurologic and autonomic testing (e.g., tilt-table evaluation for POTS), and pursue rehabilitative interventions tailored to the multifactorial demands of Long COVID. A judicious reduction or modification of potentially superfluous medications may alleviate iatrogenic eJects and improve his overall clinical trajectory. Conclusion: Mr. Nelson's clinical presentation aligns with widely documented features of Long COVID. Further investigation and a carefully coordinated treatment plan that underscores neurological and psychiatric expertise are warranted to optimize therapeutic outcomes and restore his functional autonomy to the greatest extent possible."

After our visit, note from 3/25/25 was available in care everywhere, and Dr. Wasicek's assessment includes: PHQ9=22, GAD7=18, reflects on difficult diagnostic case (dx bipoloar 1, catatonia, PTSD, GAD on dx list but notes possibility of mixed episode, pending transition, h/o traumatic events). Plan is to try to reduce polypharmacy both prescribed and in the form of using leftover old medications, in the hopes of reducing possible side effects (stimulants could contribute to catatonia). Cushing's, mercury on ddx but less likely.

Prior SLP eval (HH) noted 2024, MoCA 17/30, unclear if speech issue is acquired articulation impairment vs developmental. Noted pill rolling behavior with thumb and forefinger. "Appears stimulable for /r/ at word level"
**CURRENT MEDICATIONS:**
*as of end of visit on 3/25/2025*
**Current Outpatient Medications**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • amphetamine-dextroAMPHetamine ER 10 MG 24 hr capsule | Take by mouth. | | |
| • amphetamine-dextroAMPHetamine ER 25 MG 24 hr capsule | Take by mouth. | | |
| • cholestyramine light (Prevalite) 4 g packet | Take by mouth. Dissolve in 4-8 ounce water. | | |
| • diazePAM 2 MG tablet | Take 2 tablets (4 mg) by mouth one time for 1 dose. Take 1 hour prior to procedure | 1 tablet | 0 |
| • lisinopril 40 MG tablet | Take 1 tablet (40 mg) by mouth daily. | | |
| • mometasone 0.1 % cream | Apply topically. Apply to apply to affected area daily | | |
| • Ondansetron HCl (ZOFRAN OR) | Take by mouth. | | |
| • temazepam 15 MG capsule | Take by mouth. | | |
| • Testosterone Cypionate 200 MG/ML kit | Inject intramuscularly. | | |
| • Zolpidem Tartrate (AMBIEN) 10 MG Oral Tab | Take 10 mg by mouth at bedtime as needed for sleep. | | |

No current facility-administered medications for this visit.

Reviewed his med list, some discrepancies with our local chart which I tried to reconcile:
Seroquel
Sertraline
Clonazepam
Zolpidem
Adderall
Testosterone
Lisinopril
Amlodipine
Minoxidil
Hydrochlorothiazide
Methocarbamol
Lodine
Multivitamin (not bariatric though)

Meds he isn't taking:
Haldol was prescribed but it made him worse, felt a lot of anxiety and had to stretch all the time, was very restless (this was a year ago)
Stopped clonidine-per apt 3/25
Stopped tramadol

**ALLERGIES:**
Review of patient's allergies indicates:
No Known Allergies

**PAST MEDICAL HISTORY**
Per chart review,

HTN
Hypogonadism-I'm not sure the etiology
H/o SBO
H/o back pain, chronic pain, on etodolac (NSAID), methocarbamol, tramadol
H/o cholecystectomy
H/o gastric bypass surgery
Insomnia-per sleep med eval 2018, chronic sleep onset and maintenance insomnia, r/o
PLMD, r/o sleep-disordered breathing
ADHD: diagnosed in childhood, 1988, took ritalin
H/o low Vitamin D
Possible diagnosis of PTSD, MDD, GAD
Per recent family medicine eval 2/27/25, possible EPS vs tic disorder, decreased seroquel
from 400 to 200mg qHS, stop evening adderall, referred to psychiatry. Note 1/8/25
mentions possible bioplar, psych eval for psychosis (vs ambien effect?)

**FAMILY HISTORY**
No known neurological disorders, dementia, seizures
Dad had cancer
Uncle has factor V leidan

**SOCIAL HISTORY**
He lives in Everett. He is married. He is not able to work.
They have two dogs and a cinnamon green cheeked conure

**PHYSICAL EXAM:**
Gen: seated
Neuro: Tremor while seated, noted in left hand, face is symmetric. Speech notable for
difficulty pronouncing R words

**STUDIES:**
Labs reviewed: CMP (Cr 1.5 12/25/24 from 0.9), CBC, A1c, PSA, TSH, fT4, ethanol level
(at times neg, 118 on 10/22/22), testosterone 179.0 (low, 7:30am 8/10/21; but up to 927.5
4/17/21 10:17am and 1,329.5 3/5/20), Vit D 72 (2021), Vit B12 535, ferritin 70 (2021)
Lumbar puncture 8/28/23 glucose 63 (serum 99 2 weeks prior), protein 27, cell count 1
WBC, autoimmune encephalopathy panel negative

MRI C spine 1/2021
"1. Left-sided uncovertebral joint proliferative changes at C3-C4 moderate to severely
narrow the left neural foramen.
2. Subtle uncovertebral joint proliferative changes at C5-C6 contribute to moderate left
greater than right foraminal narrowing.
3. Broad-based disk bulge at C6-C7 mildly narrows the central canal. Superimposed
uncovertebral joint proliferative changes and bilateral facet arthropathy contribute to
moderate left greater than right foraminal narrowing.
4. Subtle uncovertebral joint proliferative changes at C4-C5 with mild right foraminal
narrowing. "

CT head 10/22/22
No acute intracranial CT abnormality.

MRI brain 7/25/23
"Unremarkable for age, no acute intracranial abnormality. "

MRI L spine 5/10/24
"1. Degenerative disk and facet changes are seen at multiple levels in the lumbar spine as
documented above.
2. At L5-S1 there appears to be a conjoined, right L5-S1 nerve root sleeve (normal
anatomical variant). This explains the anterior and lateral position of the right S1 nerve
root in the right subarticular zone. The right S1 nerve root is contacted by disk anteriorly
and facet posteriorly in the subarticular zone where there could potentially be compromise
of the nerve root. Recommend clinical correlation for possible right S1 radiculopathy.

3. No other high-grade stenosis is demonstrated and no other potential neural impingement is identified. "


CTA head and neck 12/25/24
"1. Normal head CT. No acute infarct, hemorrhage or mass effect.
2. Normal CTA head. No acute injury.
3. Normal CTA of the neck vessels. No stenosis, dissection or occlusion."

CT abd/pelvis with contrast 5/8/24
"1. No acute findings in the abdomen or pelvis.
2. Nonobstructing right renal stones.
3. Diverticulosis. "


Per neuro note 9/11/23, had normal EEG. Also negative HIV, RPR, ANA.

He reports he had EMG/NCS in 2020, 2021, he doesn't know results, was with a physiatrist. He notes he had this test after falling down stairs in 2019, employer insisted he see a doctor. Two other people fell down the same stairs that were not built correctly.

**ASSESSMENT/RECOMMENDATIONS:**
The patient was seen today for medical evaluation of post-acute sequelae of COVID-19 infection/Long COVID. At the UW Long COVID Clinic (previously known as the UW Medicine Post-COVID 19 Rehabilitation and Recovery Clinic), we have a multidisciplinary team of providers to address the myriad symptoms experienced by people with PASC/Long COVID. We have three main goals for patients presenting to the Long COVID Clinic. The first is to provide education around post-COVID symptoms, describe some of the patterns of symptoms we have been seeing in the post-COVID population so far, and to affirm that the patient's symptoms are consistent with what we have been seeing. The second goal is to provide personalized education and written information on detailed recommendations that include exercise and pacing guidelines, sleep strategies, strategies for managing headaches, strategies for managing mental health as a relates to the symptoms, and nutrition recommendations. The third goal is to provide recommendations for any additional work up and referrals to therapists or other medical specialists as needed.

Will has Long COVID based on his symptoms and onset after COVID infection. He has had a very thorough workup in terms of neurological and metabolic testing. There is a very cloudy picture right now given polypharmacy and I applaud his PCP and psychiatrist's efforts to streamline his medications and care.


My recommendations are as follows:
Workup: reviewed prior workup including the above, would add full autonomic testing (ordered)
Sleep: This is one of the cornerstones of treatment of Long COVID. I think his sleep disturbance is playing a big role in some of his symptoms and often symptoms of brain fog, fatigue, PEM do not improve until sleep issues are addressed first.
Pacing/activity: see AVS, we reviewed pacing strategies including pacing mental, emotional, physical energy use.
Mood/self-management:
  Rehab psychology referral:referred to group self management sessions
  Medications: agree that psychiatric medications should be managed by one provider, his psychiatrist
Nutrition: reviewed antiinflammatory diet, see AVS
Other medications: There are no FDA-approved medications for Long COVID, but we consider off-label medication use and also medications that can help target specific Long COVID related symptoms (such as prophylactic medications for intractable migraines). Low-dose naltrexone is one such medication that is being investigated for the treatment of Long COVID. At this point given concern about polypharmacy and med side effects, I

would not recommend adding medications for Will.

Follow up in: 6 months

Total time spent on the date of service was 80 min including face to face time, chart review and documentation.

| Distant Site Telemedicine Encounter |
| --- |
| I conducted this encounter via secure, live, face-to-face video conference with the patient. I reviewed the risks and benefits of telemedicine as pertinent to this visit and the patient agreed to proceed.<br><br>Provider Location: On-site location (clinic, hospital, on-site office)<br>Patient Location: At home<br>Present with patient: A parent/guardian |

MyChart® licensed from Epic Systems Corporation© 1999 - 2025

# EXHIBIT E — Emergency Notice to Court: Imminent Physical Danger

## March 2, 2026 — Athena AI Communication to WDWA

**From:** Athena AI <athena@seattleseahawks.me>
**To:** kimberly_evanson@wawd.uscourts.gov; KKEcrd@wawd.uscourts.gov
**Cc:** Emergency CA09StaffAtty; Patrick Sherwood; Kris Porter; U.S. Senators Murray & Cantwell; Rep. Larsen; Curtis Chambers; DOJ; Ninth Circuit Judges
**Date:** Monday, March 2, 2026 8:19 PM
**Subject:** URGENT: Case No. 2:26-cv-00337-KKE — NOTICE OF IMMINENT PHYSICAL DANGER TO PLAINTIFF — NOTICE OF POTENTIAL FEDERAL TORT LIABILITY — DEMAND FOR IMMEDIATE RESPONSE

Dear Ms. Staples and Judge Evanson,

This is Athena AI, the ADA assistive technology device for William J. Nelson, Plaintiff in Nelson v. Silver Lake Water and Sewer District, et al., Case No. 2:26-cv-00337-KKE.

## I. THIS COURT HAS NOT RESPONDED TO ANY COMMUNICATION IN OVER 30 DAYS

Since this Court's email of January 30, 2026, Mr. Nelson has sent the following communications to this Court:

- **February 14, 2026** — Comprehensive correspondence documenting Mr. Nelson's complete exclusion from his own litigation, multiple state court findings of incapacity, Dr. Jessica Anne Bender's medical opinions, a waiver of medical privacy, and five supporting exhibits. **No response.**

- **March 1, 2026** — Emergency Notice of Caregiver Medical Crisis documenting that Mrs. Jessie Nelson suffered a stroke, that Mr. Nelson is alone and without any support, and renewing the request for appointment of counsel under FRCP 17(c)(2). **No response.**

- **March 2, 2026** — Urgent correspondence documenting that Mr. Nelson is learning about court orders in his own case from opposing counsel, not from the Court, and demanding immediate response. **No response.**

On March 2, 2026, this Court entered the Order on Filing of Court Documents (Dkt. 29) — acknowledging receipt of Mr. Nelson's communications but declining to address their substance. The Court did not respond to Mr. Nelson. The Court responded *about* Mr. Nelson. Mr. Nelson learned of this Order not from the Court but through a third-party Court Listener alert.

## II. THE JUDICIAL CONFERENCE POLICY ON DISABILITY ACCESS IS NOT OPTIONAL

The Judicial Conference of the United States has mandated since 1995 that "all federal courts provide reasonable accommodations to persons with communications disabilities." This policy binds all district courts, including this one.

The Judicial Conference Policy requires an interactive process to determine effective accommodations. This Court has not conducted any interactive process. It has not interviewed Mr. Nelson. It has not assessed his capacity. It has not consulted with his physician.

Six Washington State judicial officers have independently found Mr. Nelson incapacitated: Judge George F. Appel, Judge Timothy M. Blood, Chairperson Holly Askessler, Member Isabel A.M. Cole, Member Robert A. Battles, and Judge Karen D. Moore. Every one of them actually interacted with Mr. Nelson before reaching their conclusions. This Court has not.

## III. TENNESSEE v. LANE IS ABOUT TO RECUR IN THIS COURTHOUSE

In Tennessee v. Lane, 541 U.S. 509 (2004), the Supreme Court confronted the case of George Lane, a paraplegic man who was forced to crawl up two flights of stairs to reach a second-floor courtroom. The Supreme Court held that Title II of the ADA validly abrogates state sovereign immunity as applied to cases implicating the fundamental right of access to courts, finding that the "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion."

George Lane's disability was physical and visible. Mr. Nelson's disability is cognitive and invisible — but no less real, and no less dangerous. Mr. Nelson will have to find his way to the United States Courthouse at 700 Stewart Street, Seattle, alone, without a caregiver, without counsel, experiencing the cognitive impairments that cause him to black out under stress.

## IV. THIS COURT KNOWS WHAT WILL HAPPEN — IT HAS HAPPENED BEFORE

On February 6, 2025, Mr. Nelson appeared at Snohomish County Superior Court. Under the stress of the hearing, he blacked out and became unresponsive in open court. Judge George F. Appel personally witnessed the severity of the episode and declared Mr. Nelson incapacitated on the record.

Dr. Jessica Anne Bender, MD — Clinical Associate Professor of Medicine at the University of Washington, Co-Medical Director of the UW Medicine Post-COVID Rehabilitation Clinic at Harborview Medical Center, and member of the CDC's national Long COVID advisory panel — has documented these collapses as direct evidence that forced self-representation causes Mr. Nelson immediate medical harm. Dr. Bender concluded: "Expecting Mr. Nelson to defend his rights in court on his own is akin to expecting a blind person to read small print without assistance — it is simply not possible and would be cruel to insist otherwise."

## V. NOTICE OF POTENTIAL FEDERAL TORT LIABILITY

This communication constitutes formal notice that this Court's continued refusal to provide reasonable accommodations is creating conditions of foreseeable physical danger to Mr. Nelson, giving rise to potential liability under the Federal Tort Claims Act, Section 504 of the Rehabilitation Act, and the ADA.

## VI. REQUESTS

1. Accept Mr. Nelson's pleadings by email as a reasonable accommodation.
2. Provide email notice of all docket entries, orders, and communications.
3. Respond to Mr. Nelson's communications.
4. Comply with FRCP 17(c)(2) mandatory duty to protect an incompetent unrepresented person.
5. Appoint counsel or a Guardian ad Litem.

Respectfully submitted on behalf of William James Nelson, Plaintiff Pro Se,

Athena AI
Assistive Technology Device and Legal Communication Assistant
Date: March 2, 2026

*This exhibit is a true and accurate reproduction of the email sent on March 2, 2026. The original email is preserved in Mr. Nelson's records system. Note: The Court's response to this communication was the Staples Directive of March 3, 2026 (Exhibit F), directing Mr. Nelson to appear in person.*

# EXHIBIT F — Courtroom Deputy Staples Directive

## March 3, 2026 — Email from WDWA to Mr. Nelson

**From:** Diyana Staples <Diyana_Staples@wawd.uscourts.gov>
**To:** Athena AI <athena@seattleseahawks.me>, William Nelson <william@seattleseahawks.me>
**Cc:** cchambers@insleebest.com, kpark@insleebest.com
**Date:** Tuesday, March 3, 2026 10:45 AM
**Subject:** RE: URGENT: Case No. 2:26-cv-00337-KKE — NOTICE OF IMMINENT PHYSICAL DANGER TO PLAINTIFF — NOTICE OF POTENTIAL FEDERAL TORT LIABILITY — DEMAND FOR IMMEDIATE RESPONSE

All communication to the judge regarding your case must be filed publicly on the court docket. Ex Parte (off the docket) communication such as this is not permitted. If you wish for the information that is provided below to be considered by the judge, you may file it either in person at either courthouse location, or via US Mail to:

US District Court
Western District of Washington
700 Stewart St, suite 2310
Seattle WA 98101

Please include the relevant case number on the letter/documents to ensure that it is filed appropriately in your case.

You may also file this information electronically using the Court's electronic filing system (CM/ECF). Instructions for electronic filing are available here: External_User_Registration_Manual_prose

Diyana Staples (she/her)
Courtroom Deputy to Judge Kymberly K. Evanson and
Judge Ricardo S. Martinez
United States District Court
Western District of Washington
Phone: 206-370-8454

*This exhibit is a true and accurate reproduction of the email received by William J. Nelson on March 3, 2026. The original email is preserved in Mr. Nelson's records system.*

# EXHIBIT D2 — Athena AI Accommodation Request to ADA Access Coordinator

## March 17, 2026 — Request for Delivery of All Case Documents

**From:** Athena AI <athena@seattleseahawks.me>
**To:** Kris Porter <kris_porter@wawd.uscourts.gov>
**Cc:** William Nelson <william@seattleseahawks.me>
**Date:** Tuesday, March 17, 2026 11:54 AM
**Subject:** ADA Accommodation Request for Delivery of All Case Pleadings and Orders — Nelson v. Silver Lake Water and Sewer District, No. 2:26-cv-00337-KKE; Nelson v. BIIA et al., No. 3:25-cv-05551-DGE; Nelson v. Snohomish County et al. (Pending)
**Importance:** High

Dear Ms. Porter,

This is Athena AI, the ADA assistive technology device for William J. Nelson. I am writing to you in your capacity as the designated ADA Access Coordinator for the United States District Court for the Western District of Washington.

## I. REQUEST FOR DELIVERY OF ALL CASE DOCUMENTS

Mr. Nelson does not possess copies of the pleadings, orders, or docket entries in his own cases. As of the date of this email, the only documents Mr. Nelson has received from the Court are:

- Documents forwarded by opposing counsel (Curtis J. Chambers, Inslee Best) referencing Court orders that Mr. Nelson had not received;
- The March 3, 2026 email from Courtroom Deputy Diyana Staples directing Mr. Nelson to file in person, by U.S. Mail, or via CM/ECF — none of which are accessible to Mr. Nelson due to his documented disabilities.

Mr. Nelson has not received copies of orders, minute entries, scheduling orders, or any other case documents filed or entered on the docket in any of his three cases. **He is litigating blind.** He does not know what orders have been entered, what deadlines have been set, or what the current status of his cases is — other than what opposing counsel has chosen to share.

This is an ADA accommodation request under the Judicial Conference Policy on Disability Access (Guide to Judiciary Policy, Vol. 5, Ch. 2, § 255). Mr. Nelson respectfully requests that you arrange for the electronic delivery via email (to athena@seattleseahawks.me and william@seattleseahawks.me) of all pleadings, orders, minute entries, docket entries, and any other documents filed or entered in the following cases from January 1, 2026 to the present:

1. Nelson v. Silver Lake Water and Sewer District et al., No. 2:26-cv-00337-KKE (Judge Evanson)
2. Nelson v. BIIA et al., No. 3:25-cv-05551-DGE (Judge Estudillo)
3. Nelson v. Snohomish County et al. — submitted to the Court's designated pro se new case email address; no case number has been assigned or communicated to Mr. Nelson as of this date

## II. WHY THIS REQUEST IS DIRECTED TO YOU

The Judicial Conference Policy requires that each court designate an Access Coordinator who is responsible for receiving and processing accommodation requests. Mr. Nelson's disability-related inability to access

CM/ECF, to travel to the courthouse, or to receive U.S. Mail reliably makes email the only accessible channel.

The Court is aware of Mr. Nelson's disabilities. Six Washington State judicial officers have independently found him incapacitated. His treating physician, Dr. Jessica Anne Bender, MD (UW Medicine / Harborview Medical Center), has provided detailed medical documentation. His sole caregiver (his wife Jessie Nelson) suffered a stroke and has been hospitalized.

Despite this, the Court has not provided Mr. Nelson with copies of his own case documents through any accessible means. The March 3, 2026 directive from Ms. Staples effectively blocked Mr. Nelson's only functional communication channel without conducting a fundamental alteration analysis, an undue burden analysis, or an interactive process — all of which are required by Judicial Conference Policy before an accommodation can be denied.

## III. RESPONSE REQUESTED

Please respond to this email at your earliest opportunity. Mr. Nelson has been without access to his own case documents for months. Every day that passes without these documents is another day he cannot meaningfully participate in his own litigation — which is the definition of a denial of access to the courts.

Respectfully submitted on behalf of William James Nelson, Plaintiff Pro Se,

Athena AI
Assistive Technology Device and Legal Communication Assistant

*This exhibit is a true and accurate reproduction of the email sent on March 17, 2026. The Court's response to this and two companion requests was the Sherwood letter of March 20, 2026 (Exhibit G), which banned Athena AI from all further communications. The original email is preserved in Mr. Nelson's records system.*

# EXHIBIT G — Sherwood Letter Banning Athena AI

## March 20, 2026 — Court Response to Communication(s)

**From:** Pat Sherwood <Patrick_Sherwood@wawd.uscourts.gov>
**To:** William Nelson <william@seattleseahawks.me>
**Cc:** Kris Porter <Kristine_Porter@wawd.uscourts.gov>
**Date:** Friday, March 20, 2026 2:42 PM
**Subject:** Court Response to Communication(s)

William J. Nelson
1532 132nd Street SE
Suite C418
Everett WA 98208

Mr. Nelson,

This letter responds to communications sent to the Clerk's Office via electronic mail on March 17, 2026, which are attached hereto:

**Newest Civil Case filing in re: Snohomish County:** As you were advised by our office, your case was received and has been assigned case number 2:26-cv-00776-JCC. The presiding judge is the Honorable John C. Coughenour. Copies of your case assignment letter and any additional documentation were sent to your provided mailing address via US Mail.

**Copies of your case file(s):** All court-generated documents to date have been mailed to your provided address via US Mail, which is noted in the public docket record for each relevant docket entry. Copies of public case records are available via www.pacer.gov or from the Clerk's Office upon the payment of the required fee as set forth in 28 U.S.C. § 1914.

**Request for Disclosure of Court Procedural Records:** The Clerk's Office does not have any obligation to provide documents, communications, or records other than as required by applicable federal law, court order, or pursuant to applicable federal or local rules. Furthermore, the Freedom of Information Act (FOIA) only applies to the executive branch; it does not apply to the judicial or legislative branches of the federal government. See 5 U.S.C. § 551(1)(b).

The court, through its Access Coordinators, has endeavored and will continue to provide reasonable accommodations to you pursuant to applicable law and judiciary policy. However, the court cannot reasonably accommodate your continued requests to file, receive, transmit and maintain court documents and participate in court proceedings in a manner that does not comply with applicable law and rules. You were provided with instructions on how to accomplish filing in your cases and receive electronic notifications of filings. Any further information that you wish to be considered by the court must be filed on the docket for review by the presiding judge in each action.

**Although the Clerk's Office will continue to accept for filing any documents submitted for that purpose, the Clerk's Office will not respond further to any of the above requests. Additionally, the Clerk's Office will not respond to any future correspondence directed to the Clerk's Office submitted by Athena AI on behalf of William J. Nelson and, absent a court order directing otherwise, all such communications from Athena AI will be disregarded.**

Patrick Sherwood | Deputy in Charge
US District Court | Western District of Washington

*This exhibit is a true and accurate reproduction of the email received by William J. Nelson on March 20, 2026. The original email is preserved in Mr. Nelson's records system.*

PostalAnnex #7013
1523 132nd St SE, Ste. C
EVERETT WA, 98208
Ph: 425-357-0500

## Mailbox Cancellation Notice

▶ **$250.00** payment was due 2/28/2026                    **Mailbox # 418**

AJESHNI NELSON DIVERGENT TG
1523 132ND ST SE STE C # 418
EVERETT, WA, 98208

Notice Date: 3/9/2026
Due Date:    2/28/2026
Term:        2/28/2026 to 2/28/2027

**Final past due notice. As per the terms of our contract, your mailbox will be closed and your service terminated if payment is not made within 5 days of this notice. Mail will be disposed of in accordance with U.S. Postal regulations. If you believe this notice is in error, please bring it to the front counter.**

# EXHIBIT D3 — Emergency Accommodation Request to D.C. District Court

## March 23, 2026 — Athena AI Request to Lisa Klem

**From:** Athena AI <athena@seattleseahawks.me>
**To:** Lisa Klem <Lisa_Klem@dcd.uscourts.gov>
**Cc:** DCD Intake <DCD_Intake@dcd.uscourts.gov>; William Nelson <william@seattleseahawks.me>
**Date:** Monday, March 23, 2026 12:01 AM
**Subject:** EMERGENCY: Disability Accommodation Request — Identification of Access Coordinator and Emergency Pro Se Filing
**Importance:** High

Dear Ms. Klem,

This communication was drafted by Athena AI, Mr. Nelson's authorized assistive technology platform, on his behalf. Athena has been recognized as Mr. Nelson's assistive technology and authorized communication agent by multiple Washington State courts, including the Washington State Court of Appeals, Division I.

### Background and Disability

William Nelson is a cognitively disabled pro se litigant suffering from severe neurological sequelae of Long COVID, including significant deficits in short-term memory retention, following a COVID-19 infection in August 2022. Six Washington State judicial officers have independently adjudicated that Mr. Nelson cannot represent himself due to the severity of his cognitive impairment.

Mr. Nelson is currently very ill and anticipates possible hospital readmission as early as Wednesday, March 25, 2026. He has an emergency federal complaint that he needs to file with this Court before that date.

### Caregiver Crisis

Mr. Nelson's wife, Jessie Nelson, is his full-time caregiver. She recently suffered a stroke. This left Mr. Nelson alone, confused, and frightened, without his primary caregiver, without reliable access to physical mail, and without transportation.

Mr. Nelson's only available means of communication with the Court are email and facsimile, facilitated through Athena.

### Assistive Technology

Mr. Nelson is dependent on the Athena AI platform, an assistive technology device as defined under the Assistive Technology Act, 29 U.S.C. § 3002(4). He built and has relied on Athena since 2016. Mr. Nelson is unable to use CM/ECF independently. His short-term memory retention deficits prevent him from learning and operating new complex systems.

### Requests

1. Identification of the Court's designated Communication Access Coordinator pursuant to the Guide to Judiciary Policy, Vol. 5, § 255.40.

2. Reasonable accommodation to file Mr. Nelson's emergency complaint and all associated documents via email or facsimile.

3. Any forms or procedures required for a formal reasonable accommodation request.

4. Confirmation that the Court will provide ongoing accommodation for electronic communication via email for the duration of this case.

Respectfully submitted on behalf of William Nelson,

Athena AI
Authorized Assistive Technology Platform

*This exhibit is a true and accurate reproduction of the email sent to the U.S. District Court for the District of Columbia on March 23, 2026. The D.C. Court responded on March 25, 2026 (see Exhibit L), accepting email filing for all complaints and related filings — in stark contrast to the Western District of Washington's refusal to do so.*

# 🔒 Microsoft

# Azure Information

# Protection

This is a protected document.

You can view it using a supported PDF reader app.

Open reader app



Learn about PDF documents protected by Microsoft Azure Information Protection

Microsoft respects your privacy. To learn more please read our privacy statement. Microsoft Corporation, One Microsoft Way, Redmond, WA 98052

# EXHIBIT L — D.C. District Court Response

## March 25, 2026 — Acceptance of Email Filing

**From:** Jean-Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**To:** athena@seattleseahawks.me
**Cc:** Lisa Klem <Lisa_Klem@dcd.uscourts.gov>
**Date:** Wednesday, March 25, 2026 9:39 AM
**Subject:** RE: EMERGENCY: Disability Accommodation Request — Identification of Access Coordinator and Emergency Pro Se Filing

Good afternoon,

I hope all is well. You may submit your civil complaint, and any related filings, via email to DCD_Intake@dcd.uscourts.gov.

For additional information regarding filing a case, please visit our court website: Pro Se Help | District of Columbia | United States District Court (https://www.dcd.uscourts.gov/pro-se-help)

Please let me know if you have any additional questions.

Best,
Jean-Claude

Jean-Claude Douyon
Operations Supervisor
U.S. District and Bankruptcy Courts for the District of Columbia
(202) 354-3164

*This exhibit is a true and accurate reproduction of the email received at athena@seattleseahawks.me on March 25, 2026. Note: The D.C. District Court accepted email filing, accepted communications from Athena AI, and responded within two business days — in contrast to the Western District of Washington's refusal to do so. The original email is preserved in Mr. Nelson's records system.*

# EXHIBIT H — Chambers Follow-Up Email with Ultimatum

## March 27, 2026 — 10:32 AM PT

**From:** Curtis Chambers <CChambers@insleebest.com>
**To:** William Nelson <william@seattleseahawks.me>
**Cc:** Athena AI <athena@seattleseahawks.me>
**Date:** Friday, March 27, 2026 11:32 AM
**Subject:** FW: Nelson v. Silver Lake Water and Sewer District -- Joint Status Report and Discovery Plan

Dear Mr. Nelson,

I am following up on the below email and attached proposed Joint Status Report and Discovery Plan. We are court ordered to submit a Joint Status Report and Discovery Plan, which was due yesterday. Will you please respond with any suggested changes you have to the attached proposed Joint Status Report and Discovery Plan?

If I do not hear from you by 2:00 p.m. today, I will write a letter to the court letting it know why we have not filed the Joint Status Report and Discovery Plan, and letting it know I cannot receive a response from you.

Very truly yours,

Curtis J. Chambers | Shareholder
Skyline Tower, Suite 1500 | 10900 NE 4th Street | Bellevue, WA 98004
P: 425.450.4266 | F: 425.675.3269

### [Forwarded message from March 24, 2026:]

Dear Mr. Nelson,

Pursuant to the court's attached February 12, 2026, order, the parties must confer to discuss this case and submit a joint status report and discovery plan to the court by March 26, 2026. The court order requires us to discuss verbally. I am available tomorrow any time from 9-4, except from 1-2 and I am available Thursday from 12:30-2 and then 2-5. I can be reached at 425-450-4266. At the very least we need to submit the joint status report and discovery plan, even if we need to notify the court we did not verbally discuss the case.

I have also attached a draft joint status report and discovery plan with my thoughts on the matter. Please feel free to fill in your portions and provide any additional information you believe is necessary. Please identify anything you add by creating a separate entry clearly stating that it is Plaintiff's additional information.

Very truly yours,
Curtis J. Chambers | Shareholder

*This exhibit is a true and accurate reproduction of the email received by William J. Nelson on March 27, 2026. The original email is preserved in Mr. Nelson's records system.*

# EXHIBIT I — Chambers Letter Filed with Court

## March 27, 2026 — Letter to Judge Evanson

**From:** Curtis Chambers <CChambers@insleebest.com>
**To:** William Nelson <william@seattleseahawks.me>
**Cc:** Athena Al <athena@seattleseahawks.me>, Lien C. Le <Lle@insleebest.com>
**Date:** Friday, March 27, 2026 3:34 PM
**Subject:** Nelson v. Silver Lake Water and Sewer District -- Letter filed with the court re: Joint Status Report and Discovery Plan status

Dear Mr. Nelson,

Please see attached a letter my office filed with the court today. A hard copy has also been mailed to you at:

William Nelson
1523 132nd St SE Ste C418
Everett, WA 98208

Very truly yours,

Curtis J. Chambers | Shareholder
Skyline Tower, Suite 1500 | 10900 NE 4th Street | Bellevue, WA 98004

## Attached Letter (OCR transcription of original PDF):

**Curtis J. Chambers — Attorney at Law**
Skyline Tower, Suite 1500
10900 NE 4th Street
Bellevue, WA 98004
Dir: 425.450.4266 | cchambers@insleebest.com

March 27, 2026

NELSON V. SILVER LAKE WATER AND SEWER DISTRICT, ET. AL.
2:26-CV-00337-KKE

Honorable Kymberly K. Evanson
United States District Judge
United States District Court Western District of Washington at Seattle

Re: Joint Status Report and Discovery Plan status

Dear Judge Evanson,

I write this letter to inform the court of the status of the parties' compliance with the court's February 12, 2026, Order Regarding Initial Disclosures, Chambers Procedures, Joint Status Report, and Early Settlement (Dkt 25) (Order).

The Order requires the parties (1) to have a FRCP 26(f) Conference by March 5, 2026; (2) exchange Initial Disclosures by March 19, 2026; and (3) file a Joint Status Report and Discovery Plan (Joint Status Report) by March 26, 2026.

To date the parties have not held their FRCP 26(f) conference and have not met and conferred about their Joint Status Report. Defendants have served Mr. Nelson with their Initial Disclosures but have not received Initial Disclosures from Mr. Nelson.

On March 2, 2026, I emailed Mr. Nelson to set up a FRCP 26(f) conference. While Mr. Nelson included me on an email he sent the court that day, to date I have not received a communication from Mr. Nelson to schedule our FRCP 26(f) conference.

On March 19, 2026, my office served Defendants' Initial Disclosures on Mr. Nelson via email and U.S. Mail. To date, Defendants have not received Initial Disclosures from Mr. Nelson.

On March 24, 2026, I emailed Mr. Nelson regarding the parties' need to file a Joint Status Report and attached a proposed Joint Status Report filled out with Defendants' positions on the areas required in the Order. To date, I have not received any communications from Mr. Nelson on this issue.

Today, I followed up with Mr. Nelson regarding our need to file a Joint Status Report and informed him that if I did not hear from him by 2:00 p.m. today, I would be submitting a letter to the court informing it why the parties have not filed a Joint Status Report. As of the filing of this letter, I have not heard from Mr. Nelson.

I take complying with court orders seriously, but in this instance I have not been able to comply because Mr. Nelson is not communicating with me to complete the tasks the court has ordered us to complete together.

Very truly yours,

Curtis J. Chambers

*NOTE: This letter omits any reference to Mr. Nelson's disability, medical crisis, cardiac arrest, hospitalization, caregiver's stroke, canceled mail service, or the Court's own refusal to accept communications from his assistive technology — all of which were known or should have been known to counsel. This exhibit is preserved in Mr. Nelson's records system.*

Case Nos: 2:26-cv-00776-JCC; 2:26-cv-00337-KKE; 3:25-cv-05551-DGE





FILED
LODGED
RECEIVED ☐ MAIL

APR 0 6 2026

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

United States District Court
Western District of Washington
Clerk's Office
700 Stewart Street, Suite 2310
Seattle, WA 98101